(No. 75786.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LEROY ORANGE, Appellant.

*Opinion filed November 22, 1995.*

142

Thomas F. Geraghty, of Chicago (Arthur S. Freeman, of counsel), and Steven Wernikoff, Kelly Cassidy, David Doyle, Amy Bauman, Angela M. Coin, Thomas P. Swigert and Rod Floro, law students, for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

Defendant, Leroy Orange, was convicted by a jury in the circuit court of Cook County on charges of murder, concealment of a homicidal death, and aggravated arson. Defendant waived his right to a jury trial for purposes of a death penalty hearing, and the trial judge sentenced the defendant to death. On direct appeal, this court affirmed defendant's murder and concealment convictions and death sentence, but reversed the arson conviction. (*People v. Orange* (1988), 121 Ill. 2d 364.) The United States Supreme Court denied defendant's petition for a writ of *certiorari. Orange v. Illinois* (1988), 488 U.S. 900, 102 L. Ed. 2d 235, 109 S. Ct. 247.

Seeking post-conviction relief, defendant filed a *pro se* petition (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*) in the circuit court of Cook County. With assistance of appointed counsel, the defendant then filed an amended post-conviction petition, seeking reversal of his conviction and a new trial. After hearing arguments on the State's motion to dismiss, the post-conviction judge dismissed the petition without evidentiary hearing.. Because the defendant was sentenced to death for the underlying convictions, he appeals the denial of his post-conviction petition directly to this court. 134 Ill. 2d R. 651(a).

This court's prior opinion in this case contains a detailed recitation of the facts. (*People v. Orange* (1988), 121 Ill. 2d 364.) We repeat only those facts pertinent to the issues in the post-conviction petition.

On January 12, 1984, police responded to a report of a fire in a Chicago apartment building, and discovered the bodies of three adults—Renee Coleman, Michelle Jointer, Ricardo Pedro—and a child, Anthony Coleman. All four victims had been repeatedly stabbed, and the coroner believed that they died from the stab wounds. Defendant, an acquaintance of the victims, and defendant's half-brother, Leonard Kidd, were arrested in connection with the crimes. Defendant gave an oral statement and a signed confession to the police, admitting he stabbed the victims and attempted to burn the apartment. Defendant and Kidd were tried in separate trials. At trial, defendant testified and denied involvement in the crimes. While defendant acknowledged he was present at the apartment on the night of the crime, he testified that he left before the crimes were committed. Defendant also testified that the police coerced his confession through physical torture.

Leonard Kidd also provided a detailed statement to police that was generally consistent with defendant's

confession. However, at defendant's trial Kidd recanted his earlier statement and took full responsibility for the offenses. Kidd denied that the defendant took part in any of the crimes. The jury found defendant guilty on four counts each of murder and concealment of homicidal death and one count of aggravated arson.

The defendant chose to proceed with a sentencing hearing before the judge without a jury. At sentencing the judge found defendant eligible for the death sentence based on the statutory aggravating factors that defendant was 18 years or older at the time of the crimes, that he had been convicted of the murder of two or more individuals, and that one of the victims was under 12 years of age and was murdered in an exceptionally brutal and heinous manner. (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1(b)(3), (b)(7).) The sentencing judge found no mitigating factors sufficient to preclude a sentence of death, and the defendant was sentenced to death.

On direct appeal this court overturned the aggravated arson conviction, but affirmed defendant's murder convictions and his sentence. (*People v. Orange* (1988), 121 Ill. 2d 364.) Defendant's initial, *pro se* postconviction petition was dismissed. His amended petition, filed with the assistance of appointed counsel, was dismissed on the State's motion without an evidentiary hearing. Defendant appeals the dismissal of his amended post-conviction petition and seeks an evidentiary hearing.

## I. Ineffective Assistance of Counsel at Trial

In support of his post-conviction petition, defendant raises numerous claims of ineffective assistance of counsel at trial in violation of his sixth and fourteenth amendment rights (U.S. Const., amends. VI, XIV). Claims of ineffective assistance of counsel are analyzed under the two-prong test established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104

S. Ct. 2052, and adopted by this court in *People v. Albanese* (1984), 104 Ill. 2d 504, 525-26. To succeed on a claim of ineffective assistance of counsel a defendant must prove (1) that his attorney's performance fell below the objective standard of reasonableness, as measured by reference to prevailing professional norms, and (2) that the substandard representation so prejudiced defendant that there is a reasonable probability that, absent the errors, the outcome would have been different. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Defendant first alleges that counsel was ineffective for failing to investigate the factual basis for a motion to suppress defendant's confession. As grounds for suppression, defendant charges that prior to his interrogation he requested, but was denied, the assistance of counsel. Defendant also claims that a police officer struck him in the mouth in response to his request for an attorney. Defendant maintains that his confession was involuntary and the product of police torture during his interrogation at Area 2 police headquarters. Defendant claims that during his interrogation police used electroshock, stuck needles in his buttocks, repeatedly squeezed his scrotum, and placed a bag over his head in attempts to coerce his confession.

Defendant argues that had his trial counsel investigated further, he would have discovered evidence to corroborate defendant's allegations regarding coercive activities at Area 2. Defendant contends that his trial counsel was ineffective because he did not subpoena disciplinary files of the officers who interrogated defendant. Defendant also claims that trial counsel was ineffective for not seeking expert testimony that would have indicated that the results of defendant's post-interrogation medical exams were consistent with defendant's account of police torture. Defendant further

claims that trial counsel was ineffective for failing to consult with attorneys who represented other clients alleging police brutality in Area 2. Finally, defendant argues that trial counsel should have subpoenaed personnel records in an effort to locate the paramedic who examined defendant and completed a report called a "bruise sheet."

In support of his claim, defendant submits various affidavits to demonstrate that trial counsel should have been aware of the need for further investigation to discover evidence corroborating defendant's claims of torture. First, defendant submits the affidavit of a member of a citizen's watchdog group. The affiant describes a pattern and practice of police brutality at Area 2 during the period 1982-84 consistent with defendant's allegations. However, the citizen's watchdog group representative does not name any of the persons who interrogated or arrested this defendant as being a party to the pattern and practice of police brutality in Area 2. Defendant also submits the affidavit of an expert who would have testified at trial that the type of torture defendant alleges he suffered is designed to leave no physical injuries. Finally, defendant offers reports prepared by the City of Chicago's Office of Police Standards concerning an internal investigation of police misconduct in Area 2 in the period 1982-84. However, these reports were not available at the time of defendant's trial, and the trial testimony did not place any of the officers cited in the report at defendant's interrogation. One officer did testify that Jon Burge, the lieutenant at Area 2 named in the internal investigation, and since separated from the police force, was possibly present during defendant's interrogation. However, two other officers testified at trial that Burge was not present during defendant's interrogation.

The paramedic and physician reports submitted with

defendant's post-conviction petition record defendant's claim that he was subjected to needle pricks and electronic probe, yet neither physical exam report corroborates these allegations. The paramedic report, or "bruise sheet," contains a line pointing to the diagram of the left buttock with the word "slight." However, the paramedic did not testify at trial and his report was ruled inadmissible for lack of foundation. After the paramedic examined the defendant, a physician also performed an exam. The physician testified at trial that he found no bruising or indication of tenderness on defendant's back, scrotum or anus. The only mark on defendant's body the physician noted was a slight pimple on the buttocks.

As a preliminary matter, the State argues that this and many of defendant's claims regarding his trial attorney's performance are waived because they could have been raised on direct appeal. Generally, the issue of trial counsel's competence is waived where defendant's appellate counsel fails to raise the issue on direct appeal. (*People v. Owens* (1989), 129 Ill. 2d 303, 308.) However, where facts relating to the issue of incompetency do not appear of record, the waiver rule is relaxed. (*Owens*, 129 Ill. 2d at 308.) Because many of defendant's claims rely on evidence not contained in the record on direct appeal, we address those claims in turn.

We do not believe that counsel's failure to investigate defendant's claim of police misconduct as a basis for a motion to suppress in this case failed to meet reasonable professional standards. Counsel has only a duty to make reasonable investigations or to make a reasonable decision which makes particular investigations unnecessary, and the reasonableness of a decision to investigate is assessed applying a heavy measure of deference to counsel's judgment. *People v. Harris* (1989), 129 Ill. 2d 123, 158, citing *Strickland v. Washington* (1984), 466

U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.

In his deposition, trial counsel states that he did not talk with police to investigate the claims of brutality, because he "did not have specifics" and defendant had not told him which officers were involved in the interrogation and the claimed brutality. Trial counsel admits that he was contacted by attorneys representing Andrew Wilson, a defendant in another case, who alleged police abuse at Area 2. However, defense counsel states that he did not seek more information from Wilson's attorneys because he found defendant's case distinguishable from Wilson's. Wilson had observable injuries and several witnesses to his prearrest and post-arrest condition, in contrast to defendant, who had no observable physical marks and no witnesses. Defense counsel also stated that he did attempt to locate the paramedic who completed the bruise sheet, and personally went to the paramedic's last known address. Counsel also explained that he believed he spoke with hospital personnel in a further attempt to locate the paramedic, but was not successful in reaching him.

Where the circumstances known to counsel at the time of his investigation do not reveal a sound basis for further inquiry in a particular area, it is not ineffective for the attorney to forgo additional investigation. (*People v. Holman* (1995), 164 Ill. 2d 356, 371.) Here, at the time of defense counsel's investigation, the only evidence to support defendant's allegation of coercion was defendant's own statements and a questionable entry on the paramedic's report. Moreover, the affidavits submitted by defendant in support of his amended post-conviction petition are generalized and do not support the claims of torture or coercion made by him in this case. Because generalized allegations of coercive activity in Area 2, without other evidence, would not establish that this de-

fendant was coerced into confessing (*People v. Jones* (1993), 156 Ill. 2d 225, 245 (occurrences of past police brutality have no relevance to instant case)), we believe that it was not unreasonable for counsel to curtail his investigation. Further, trial counsel's decision not to consult more with Andrew Wilson's attorneys was reasonable in light of the dissimilarity of the cases. (See *People v. Hobley* (1994), 159 Ill. 2d 272, 311-12 (specific allegations of prior police torture may be admissible only with sufficient indicia of timeliness and similarity).) In light of this lack of corroborative evidence, defendant fails to demonstrate that the scope of the investigation trial counsel conducted was unreasonable.

Moreover, defendant's claim fails because he does not demonstrate that he was prejudiced by the breadth of trial counsel's investigation. To prevail on a claim of ineffective assistance of counsel based on a failure to investigate, defendant must show that substantial prejudice resulted and that there is a reasonable probability that the final result would have been different had counsel properly investigated. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see *People v. Kluppelberg* (1993), 257 Ill. App. 3d 516, 527.

Even if trial counsel had conducted a broader investigation of defendant's claims of police brutality, it is unlikely that such an investigation would have changed the outcome. The medical examination reports did not support a claim of physical abuse, and the defendant exhibited no evidence of trauma. There were no witnesses to the alleged brutality. Therefore, there is no reasonable probability that even if trial counsel had investigated further, a motion to suppress defendant's confession would have been granted.

Defendant next claims that trial counsel was ineffective for failing to file an amended motion to suppress his confession on the basis of coercion. Before trial,

defendant's counsel presented a motion to suppress the confession, but the trial judge rejected the motion on the grounds that it was legally insufficient. The court allowed defense counsel to withdraw the motion and the motion was not resubmitted. We note that the original motion to suppress the confession is not part of the record.

In his deposition, counsel described his strategic decision not to resubmit the motion. Counsel stated that after the court summarily rejected the motion, counsel believed submitting the question of coercion directly to the jury would be more successful than asking the trial judge to reconsider the motion. Counsel also maintained that once he decided that he would present the coercion evidence to the jury, presenting the issue in a motion to suppress would be unwise, as it would only give the police "a chance to get a good dress rehearsal" at the suppression hearing. Further, counsel stated that given the lack of physical evidence, counsel believed the only way he could "properly present the motion *** would be to have [defendant] testify, and subject him to cross-examination," which could be potentially damaging to the defense.

Defendant denies the possibility that defense counsel's decision not to refile the motion to suppress was a strategic decision. Defendant alleges that his trial counsel's failure to resubmit the motion was motivated by monetary considerations because, at the time defense counsel filed the motion to suppress defendant's confession, he was acting *pro bono*. Defendant contends that counsel did not refile the motion because he was concerned that it was too time-consuming, and counsel was not being compensated for his services.

The facts do not support defendant's claim that his counsel's decision was based on monetary considerations. The record indicates that defense counsel sought court

appointment, but his request was denied one month before the motion to suppress was filed. When appointment was denied, defense counsel agreed to continue on a *pro bono* basis. Thus, defense counsel knew that he was receiving little or no compensation for his services when he initially tendered the motion to suppress. Presumably, he would have anticipated proceeding to hearing to present the motion. Defense counsel did not withdraw the motion in response to the court's unwillingness to appoint him as defendant's counsel, but withdrew the motion after the trial judge stated that it was legally insufficient. Accordingly, we reject defendant's argument that monetary considerations predominated counsel's decision not to file a new motion to suppress.

A decision which involves a matter of trial strategy will generally not support a claim of ineffective representation. (*People v. Flores* (1989), 128 Ill. 2d 66, 106.) Here, trial counsel's decision to submit the question of coercion to the jury in lieu of submitting an amended motion to the court was a matter of defense strategy. The record indicates that counsel followed his stated strategy and elicited testimony in the presence of the jury detailing the alleged coercive tactics. Although the strategy proved unsuccessful, we cannot say that counsel's failure to file an amended motion was outside the bounds of reasonable professional competency.

Even if we had found trial counsel's failure to file a motion to suppress outside the bounds of reasonable professional standards, defendant fails to prove prejudice. To prevail on a claim of ineffectiveness of counsel to file a motion to suppress, defendant must show that a reasonable probability exists both that the motion would have been granted and that the trial outcome would have been different had the evidence been suppressed. (See *Kimmelman v. Morrison* (1986), 477 U.S. 365, 91 L.

Ed. 2d 305, 106 S. Ct. 2574.) As noted above, the record in this case suggests that no factual basis existed for a motion to suppress. No medical evidence corroborated defendant's purported injuries. A photograph taken after defendant's confession showed no evidence of physical trauma, and no witnesses were available to support defendant's allegations of abuse. Police officers testifying at trial denied the use of torture or coercion. The defendant's wife observed defendant at the police station during the evening after his arrest, and she stated that defendant did not exhibit any signs of pain or torture. Given the lack of corroborating evidence, the record does not indicate that had a motion to suppress been filed, it would have been successful. Accordingly, trial counsel's failure to file a motion to suppress was not prejudicial to defendant.

Defendant also claims that the trial judge denied him a fair trial when the judge rejected the motion to suppress tendered by defense counsel. This claim is waived, as defendant could have raised it on direct appeal, but failed to do so. See *People v. Stewart* (1988), 123 Ill. 2d 368.

Defendant next claims that his trial counsel was ineffective because he did not articulate a meaningful defense theory in his opening statement. Defendant does not present any evidence to support this claim that was not found in the record on direct appeal. Because this claim could have been raised on direct appeal, but was not, we consider it waived. See *People v. Stewart* (1988), 123 Ill. 2d 368, 372.

Defendant next alleges that his trial counsel was ineffective for failing to attack the reliability of defendant's confession. Defendant claims that defense counsel failed to argue to the jury the inconsistencies between defendant's custodial statement and the evidence at trial. Because defendant did not raise this claim in ei-

ther his first or amended post-conviction petition, the issue is waived. Ill. Rev. Stat. 1989, ch. 38, par. 122—3.

Defendant next argues that trial counsel's initial joint representation of defendant and Kidd created a conflict of interest that denied defendant the effective assistance of counsel. Defendant maintains that his counsel should have recognized that a conflict existed when he first agreed to represent both defendant and Kidd.

Counsel's representation of defendant and Kidd was limited to representation at several pretrial appearances over one year before trial commenced. During the period of joint representation, defense counsel moved on behalf of defendant and Kidd to (1) disqualify the originally assigned judge, (2) declare the substitution of judge statute unconstitutional (Ill. Rev. Stat. 1983, ch. 38, par. 114—5), and (3) substitute the subsequently reassigned judge. Defense counsel also engaged in discovery on behalf of both defendant and Kidd during this same period.

The chronology of the joint representation is as follows. Defendant and Kidd were arraigned on February 7, 1984, and were represented at arraignment by a private attorney, Ms. Coghlan. On the same day, defense counsel filed an appearance on behalf of both defendant and Kidd. One month after arraignment defense counsel notified the court that there might be grounds for severance. During his next appearance on behalf of both defendant and Kidd, where the State tendered considerable discovery including the statements of defendant and Kidd to police, defense counsel requested a continuance to analyze possible antagonism between defendant's and Kidd's interests. Defense counsel made two more appearances on behalf of both clients to receive discovery from the State. Finally, on April 19, 1984, after defense counsel had an opportunity to review

discovery tendered by the State, defense counsel notified the court that he had determined he could not represent both defendant and Kidd because of potential conflict. On that date defense counsel was granted leave to withdraw as Kidd's counsel and to remain as defendant's counsel. Defense counsel subsequently filed a motion on behalf of defendant for severance, which was granted.

We do not believe that defense counsel was ineffective because he represented both defendant and Kidd in the early pretrial period. As the United States Supreme Court has noted, the mere fact of joint representation of multiple criminal defendants does not create a *per se* violation of the right to effective counsel. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 482, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1178.) To prevail in a claim of ineffective assistance of counsel due to joint representation of codefendants by a single attorney, a defendant must show an actual conflict of interest manifested at trial. *People v. Cunningham* (1985), 107 Ill. 2d 143, 149.

Here, defendant does not establish that defense counsel's undertaking of joint representation during the early pretrial period resulted in an actual conflict of interest manifested at trial. Defendant's only allegation that the conflict of interest arising from joint representation was evidenced at trial is that defense counsel's rehabilitation of Kidd during redirect examination was limited.

As noted earlier, at defendant's request, Kidd testified at defendant's trial. Contradicting his preindictment statement to police, Kidd assumed responsibility for all of the offenses, and declared that the defendant was innocent of any involvement. In cross-examination, the prosecution asked Kidd whether he had discussed his testimony exculpating defendant with the defendant's attorney. Kidd denied discussing his testimony with

defense counsel. On redirect examination, defense counsel attempted to rebut any inference of collusion between defendant and Kidd by questioning Kidd regarding the withdrawal of his representation of Kidd. When defense counsel asked Kidd if the basis for withdrawal was a conflict, the State objected. After the court sustained the objection, the judge warned defense counsel at a sidebar that the judge believed that if counsel continued this line of questioning, counsel would violate the attorney-client privilege, which Kidd had not waived. Following the judge's admonition, defense counsel resumed his examination of Kidd. Ultimately, however, defense counsel was able to elicit testimony from Kidd that defense counsel had not represented Kidd for more than a year. Kidd also testified that he was currently represented by counsel other than defendant's counsel.

Defense counsel was able to make the desired inquiry, and the information that counsel no longer represented Kidd was put before the jury. Therefore, defendant has failed to demonstrate that any conflict of interest affected his counsel's performance at trial. Because he fails to show actual conflict of interest manifested at trial, we reject this claim.

Defendant next claims that defense counsel was ineffective for failing to request Kidd waive the attorney-client privilege after the judge sustained the State's objection to defense counsel's questioning of Kidd regarding the reason for defense counsel's withdrawal. However, as noted earlier, without seeking a waiver, defense counsel was still able to present evidence to the jury that he had withdrawn as Kidd's counsel over one year before trial. On this issue, defendant has failed to satisfy the prejudice prong of *Strickland*, and defendant cannot prevail on this claim. See *People v. Flores* (1992), 153 Ill. 2d 264, 283-84.

Defendant also asserts that defense counsel was ineffective for failing to seek defendant's informed consent to joint representation. Defendant cites *People v. Penland* (1978), 64 Ill. App. 3d 656, where that court held, "Because of the problems that may arise even unexpectedly, \*\*\* [joint] representation beyond the preliminary stages of a case should be viewed with caution and undertaken \*\*\* only after obtaining informed consent by the clients." (*Penland*, 64 Ill. App. 3d at 661.) Defendant's reliance is inapposite. Here, joint representation did not proceed beyond the preliminary stages of the case, and when defense counsel recognized the potential for conflict, he notified the court and withdrew from his representation of Kidd. Because defendant's attorney terminated the joint representation in the initial stages of the proceedings as soon as he determined there was a conflict of interest, there was no need to obtain consent to joint representation from the defendant.

Defendant also claims his counsel was ineffective because of a conflict of interest stemming from defense counsel's relationship with the father of one of the victims. The State argues that because the evidence of the alleged conflict was part of the record on direct appeal, it could have been raised and is therefore waived. (*People v. Stewart* (1988), 123 Ill. 2d 368.) However, in support of this claim, defendant submits an affidavit addressing in more detail defense counsel's relationship with the victim's father. Because defendant presents new evidence that was not part of the record on direct appeal, we will consider the claim.

During a trial recess, defense counsel apparently spoke with William Jointer, the father of victim Michelle Jointer. When the trial resumed, defense attorney referred to Jointer in court as a "personal friend." However, in his post-conviction deposition, defense counsel acknowledged that Jointer looked familiar, but

he could not recollect how he knew him. Defense counsel surmised that Jointer was possibly a police officer from another case. Defense counsel explained that Jointer treated him like a personal friend, so he "went along with it" out of "respect for Jointer's position." In support of this conflict of interest claim, defendant submits the affidavit of an investigator who interviewed William Jointer's widow and son. However, the affidavit does not establish a relationship at the time of trial, but only indicates that Jointer and defense counsel were classmates in high school and possibly had common acquaintances.

Based on this record, it is clear that no professional relationship existed between William Jointer and defense counsel. It is even questionable whether a personal relationship existed. Even if a personal relationship existed, defendant's claim fails because he does not show prejudice. (*People v. Davis* (1983), 97 Ill. 2d 1, 16 (to prevail on a claim arising from a conflict based on counsel's personal relationships, prejudice must be shown).) Here, defendant merely alleges in general terms that absent this relationship "the outcome of trial probably would have been different." Defendant fails to demonstrate actual prejudice, and therefore any association trial counsel had with Mr. Jointer did not subject defendant to ineffective representation.

Next, defendant claims that his trial counsel was ineffective for failing to bolster the credibility of Kidd's exculpatory testimony. Specifically, defendant contends that counsel should have presented evidence at trial regarding Kidd's possible involvement in an earlier arson resulting in multiple deaths and his alleged violent tendencies. Defendant argues such testimony would have enhanced the credibility of Kidd's testimony that he committed the present crime and defendant's claim of innocence. The State argues that evidence of Kidd's

prior crimes or bad acts would be inadmissible, and that trial counsel was not ineffective for failing to elicit testimony that the trial court would have excluded.

During the course of the pretrial proceedings, but after defense counsel withdrew from his representation of Kidd, defendant told his counsel that in 1980 Kidd had been involved in an arson that resulted in multiple deaths. At defendant's request, defense counsel reported this information to the State's Attorney, but defense counsel did not question Kidd at trial about his involvement in the earlier crime.

Initially, we note that defendant has failed to show that Kidd was willing to testify to his participation in the 1980 arson at defendant's trial. Noticeably absent from the affidavits in support of defendant's post-conviction petition is a statement from Kidd acknowledging that he would have admitted his earlier crime at defendant's trial.

Defendant further fails to show that had Kidd been willing to testify to having committed earlier crimes the evidence would have been admissible at defendant's trial. Relying on the general rule that evidence of commission of crimes or bad acts to show a propensity to commit crimes is inadmissible (*People v. Patterson* (1992), 154 Ill. 2d 414), the State argues that Kidd's testimony that he committed crimes other than those charged here would have been improper.

This court has previously held that where a defendant seeks to introduce other-crimes evidence to show that the crime was committed by another person, such evidence is admissible if it contains significant probative value to the defense. (See *People v. Cruz* (1994), 162 Ill. 2d 314, 350, citing *People v. Tate* (1981), 87 Ill. 2d 134, 143.) Defendant, however, fails to demonstrate, even under the standard applied to testimony of other crimes used to further the defense, that the testimony would

have been admissible. Defendant does not point to any similarities between the earlier arson and the resulting deaths and the current crime to make evidence of the earlier crime significantly probative of whether Kidd's confession to this crime was credible. The only evidence in the record of the earlier arson/multiple homicide is the fact that it occurred, that Kidd was questioned about it, and that it happened in 1980. Because defendant has failed to show that Kidd would have admitted his involvement in prior crimes at defendant's trial, and that the evidence would have been admissible if he had, we cannot say that defense counsel's performance was unreasonable when he failed to ask Kidd about other crimes.

We also reject defendant's argument that defense counsel was ineffective because he did not elicit testimony from Kidd regarding his past violent tendencies. Information in the affidavits submitted in support of defendant's amended post-conviction petition relates episodes of violent behavior during Kidd's childhood. Nonetheless, evidence is inadmissible if it has little probative value due to its remoteness, uncertainty or the possibility that it will be unfairly prejudicial. (*People v. Ward* (1984), 101 Ill. 2d 443, 455.) Because evidence of Kidd's violent acts during childhood was remote in time and would not have been probative of his commission of the instant crime, we find that the evidence would have been inadmissible. We cannot find that it was unreasonable for defense counsel not to attempt to elicit inadmissible testimony.

Defendant next argues that defense counsel's personal and professional circumstances impaired his ability to provide adequate representation and prejudiced defendant at trial. Defendant alleges that his trial counsel's lack of resources, physical condition, and pending Attorney Registration and Disciplinary Commission

(ARDC) charges compromised counsel's ability to render effective assistance of counsel.

This court has repeatedly held that ineffective-assistance-of-counsel claims founded on claims of counsel's distractions due to personal and professional problems are subject to the analysis articulated in *Strickland*. (See *People v. Titone* (1992), 151 Ill. 2d 19; *People v. Szabo* (1991), 144 Ill. 2d 525, 530-31.) Defendant must therefore demonstrate that personal and professional circumstances affected counsel such that his performance fell below reasonable professional standards and that, absent these distractions, the outcome of trial would have been different. *Titone*, 151 Ill. 2d at 32.

Defendant claims that because his trial counsel lacked professional secretarial or investigative assistance, did not consult with another attorney, and was paid only $400 for his representation, his performance was severely compromised. However, the only specific example defendant offers of how such alleged deficiencies resulted in substandard representation is trial counsel's failure to investigate the basis for and file a motion to suppress. As we have noted above, however, defense counsel's decision not to file the motion was competent and the motion had no reasonable probability of being granted. Therefore, defendant has failed to show that his trial counsel's alleged lack of resources resulted in deficient representation.

Defendant also claims that pending ARDC actions were a distraction that impaired his defense attorney's performance. Four complaints against defendant's counsel were pending before the ARDC prior to or during trial. The ARDC complaints were unrelated to conduct in this case and charged counsel with breach of client confidences, ineffective assistance of counsel, failure to prosecute claims, and improper splitting of fees.

Three of these claims were still pending against counsel at the time of defendant's trial. Two of the charges were ultimately dismissed or closed by the Administrator. The fourth charge became part of a six-count complaint before the Hearing Board that resulted in defense counsel's suspension from the practice of law for six months. The suspension occurred several years after defendant was tried and sentenced.

Defendant relies upon *People v. Williams* (1982), 93 Ill. 2d 309, for the proposition that pending disciplinary proceedings may result in a *per se* finding of ineffectiveness of counsel. In *Williams*, this court held the unique circumstances of the case allowed a finding of ineffectiveness without an affirmative showing that defense counsel's actual representation was substandard or that defendant suffered prejudice. The attorney in *Williams* was subject to disciplinary proceedings at the time of defendant's trial and was ultimately disbarred. The attorney represented not only Williams, but two other defendants in a complex capital case tried before two juries. In his claim of ineffectiveness of counsel, Williams provided an extensive list of counsel errors. However, this court found that the holding in *Williams* was specifically limited to the unique circumstances and "will rarely, if ever, be duplicated." (*People v. Williams* (1982), 93 Ill. 2d 309, 325.) This court has subsequently held that the *Williams* decision is "an aberration peculiar to the facts of that case." *People v. Szabo* (1991), 144 Ill. 2d 525, 529.

We find the facts in the instant case distinguishable from *Williams*. Like *Williams,* the instant case is a capital case but unlike *Williams*, in the instant case defense counsel did not represent multiple defendants at trial. Further, here defense counsel was not faced with the complex defense found in *Williams*. Our review of the record in this case shows the defense theory was

straightforward, attempting to establish that defendant's confession was coerced and that Kidd was solely responsible for the crimes. Moreover, defendant's vague allegations of counsel distraction and error do not rise to the level of enumerated examples in *Williams*. Finally, the attorney in *Williams* was subject to disbarment proceedings during trial and admitted that he felt incapable of carrying on a defense under the circumstances. In contrast, defendant's attorney did not appear before the Hearing Board until well after trial, and he made no admission of the ARDC proceedings' negative impact on his ability to represent the defendant. Therefore, we decline to apply the *Williams per se* analysis to establish ineffectiveness of counsel here.

Because we find no unique circumstances such as those in *Williams*, defendant must meet the standard of *Strickland* to prevail on his claim of ineffective assistance of counsel. (*People v. Franklin* (1995), 167 Ill. 2d 1, 19-20; *People v. Szabo* (1991), 144 Ill. 2d 525, 530.) Defendant fails to meet this burden. Defendant's vague allegations do not prove substandard performance by his defense attorney, nor has defendant demonstrated that, absent the ARDC proceedings, the outcome at trial would have been different.

Defendant also contends that his defense counsel's physical condition, specifically glaucoma and an eye infection, impeded his ability to render effective representation. The State argues this issue is waived because counsel's eye problems were of record on direct appeal. However, defendant submits evidence outside of the record to support this claim, and therefore we address it.

Defendant claims that his counsel suffered from deteriorating eyesight and failed to take measures to accommodate this disability. Defendant maintains that defense counsel's poor eyesight rendered him incapable of adequate trial preparation, especially the review of

police documents. Defendant further alleges that counsel's eyesight affected his representation because counsel prepared for trial by listening to incomplete tapes of police reports recorded by a friend of defendant.

The record reflects that defense counsel had experienced eye problems, because one request he made for a continuance prior to trial was attributed to an eye infection. Counsel also admitted in his deposition that he had a lifelong history of eye problems. However, counsel stated he is able to read with the assistance of bifocals. Counsel also stated that it is his practice to accommodate his impediment by using a magnifying glass to read irregular print such as police reports. However, counsel stated in his deposition that it was his practice to initially listen to tapes, but not to rely on them and always to review the written police reports himself prior to trial.

We find the evidence indicates counsel took reasonable steps to accommodate any obstacle in trial preparation he might suffer as a result of his sight deficiency. Further, defendant fails to demonstrate how counsel's condition prejudiced the outcome of trial. Thus, defendant's claims do not rise to the level of infringement upon his constitutional right to effective counsel.

Finally, defendant argues that the cumulative effect of the various alleged errors by his counsel constitutes an independent ground for reversing the circuit court's order dismissing the post-conviction petition without an evidentiary hearing.

Our review of the entire record here indicates that defendant's counsel presented an active defense of his client. Defense counsel filed several pretrial motions, including a successful motion to substitute judges and to sever defendant's trial from Kidd's. Defense counsel vigorously cross-examined the State's witnesses, raised objections, and presented several witnesses on behalf of

his client. Defense counsel presented a witness to exculpate defendant and elicited testimony from defendant to attack the voluntariness of his confession. Accordingly, we find that defense counsel's performance did not violate defendant's constitutional right to effective counsel at trial.

II. Ineffective Assistance of Counsel at Sentencing

Following conviction, the defendant waived his right to a jury for sentencing and the sentencing hearing was held before the trial judge. In the aggravation and mitigation phase of the hearing, the parties stipulated to evidence proffered at trial regarding the aggravated arson charge and to photos offered into evidence. The State also requested that the court take judicial notice of the evidence adduced at trial and contained in the presentence report. The State highlighted the defendant's two juvenile convictions referred to in the presentence report. No witnesses were presented in aggravation.

The defense did not present any mitigation witnesses at the sentencing hearing. When asked by the court if he wished to present mitigation on behalf of his client, defense counsel responded:

"No your [H]onor, other than to state to your Honor that we feel that there is a lack of a significant criminal history on the part of this defendant.

We are mindful of the two juvenile convictions, but we feel that that does not fall within the category that is anticipated by the statute in which a lack of significant criminal history should be considered as a mitigating factor. Other than that we have no mitigation."

The sentencing judge found no mitigating evidence sufficient to preclude the death penalty and sentenced the defendant to death.

Defendant now contends that defense counsel was ineffective for failing to inform defendant of the importance of presenting mitigating witnesses and for failing to investigate or present any mitigating evidence at the

death penalty hearing. In granting the State's motion to dismiss defendant's post-conviction petition, the post-conviction judge rejected defendant's claim that his trial counsel was ineffective at the sentencing hearing and held that defense counsel's representation was within the standards described in *Strickland*. Defendant now asks that we remand for an evidentiary hearing on this issue.

As a preliminary matter, the State argues that this issue is barred by *res judicata* because it was decided on direct appeal. Where a petitioner has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court. (*People v. Stewart* (1988), 123 Ill. 2d 368, 375-76.) On direct appeal, defendant alleged trial counsel's representation was ineffective for failure to present mitigating evidence at sentencing. (*People v. Orange* (1988), 121 Ill. 2d 364, 389.) This court noted that the record did not indicate what mitigating evidence defense counsel could have introduced or might have argued. (*Orange*, 121 Ill. 2d 364.) Accordingly, this court held that trial counsel's performance was not deficient because there was no showing that the trial counsel did not present mitigating evidence of which he was aware. However, in his post-conviction petition, defendant now presents affidavits of 18 relatives, friends, and employers who, if contacted, would have testified to positive traits and actions of the defendant despite an abusive and violent upbringing. Rules of waiver and *res judicata* will be relaxed where the facts relating to the issue of counsel's incompetency do not appear on the face of the record. (*People v. Eddmonds* (1991), 143 Ill. 2d 501, 528.) Because the record does not contain the evidence defendant now presents, we will consider the merit of defendant's claim.

As this court noted in defendant's direct appeal, fail-

ure to offer evidence in mitigation does not, in and of itself, demonstrate deficient performance. (*People v. Orange* (1988), 121 Ill. 2d 364, 389; see also *People v. Holman* (1995), 164 Ill. 2d 356, 370-75.) To succeed on a claim of ineffectiveness of counsel at sentencing, defendant must show that counsel's performance was below minimal professional standards and that a reasonable probability exists that the sentence was affected. *People v. Brisbon* (1995), 164 Ill. 2d 236, 246.

Defendant contends that his attorney's performance was substandard at sentencing because he failed to inform defendant of the role of mitigating evidence and because he failed to adequately investigate or present mitigating evidence. In his affidavit, defendant states that defense counsel advised him he could call mitigation witnesses, but maintains that counsel also stated that any testimony the witnesses would provide was unlikely to influence the sentencing judge. Defendant also states that had he understood the importance of mitigating evidence, he could have informed his counsel of numerous witnesses that would testify on his behalf.

Defendant contends that defense counsel never inquired about defendant's family history, relationships, or employment history. In support of this contention, defendant submits numerous affidavits of relatives, friends, employers and professional reports with his post-conviction petition. The affidavits recount defendant's abusive and violent childhood. Family members attest to defendant's attention toward his children, his generosity to relatives and friends and his ability to maintain family relationships. Several former employers attest to their knowledge of defendant as obedient, honest, and reliable. The affidavits also portray defendant's ability to maintain employment. Other affiants attest to defendant's honesty in business dealings and suitability as a tenant. The defendant also submitted

neuropsychological and social evaluations. Each of the affiants state that they were not contacted by defendant's attorney before sentencing, but they would have testified on defendant's behalf if asked to do so.

In the deposition submitted with defendant's post-conviction petition, defense counsel admits that he felt investigation and presentation of mitigating witnesses would be fruitless. He concedes that he did not discuss potential mitigating witnesses with defendant until the verdict was announced. Further, defense counsel acknowledges that he did not attempt to contact any witnesses to testify in mitigation. However, defense counsel contends that he acted in conformity with defendant's wishes. Defense counsel stated in his deposition that it was his "impression" that defendant "was not about to humble himself." Defense counsel believed that the defendant was unwilling to ask relatives to testify for him because he believed such testimony was unlikely to impact the sentencing judge. Defense counsel does not provide a basis for his impression or belief regarding defendant's unwillingness to present mitigation evidence.

The State argues that defense counsel's decision not to investigate possible mitigating witnesses was not deficient, but was merely in accordance with defendant's wishes. Where a capital defendant waives presentation of mitigating evidence, counsel's compliance with his client's wishes does not support a claim of ineffective assistance of counsel. (*People v. Emerson* (1987), 122 Ill. 2d 411.) However, the evidence before us does not support the State's claim that defendant "categorically refused" to call witnesses in mitigation. The information contained in defendant's affidavit and defense counsel's deposition presents a factual dispute as to the extent of defendant's unwillingness to suggest possible mitigating witnesses.

Counsel has a duty to investigate potential sources of mitigating evidence, or must have a reason not to make such an investigation. (*People v. Ruiz* (1989), 132 Ill. 2d 1, 27.) We cannot determine from this record if trial counsel had a legitimate reason not to investigate or present mitigation in compliance with his client's preferences or if defense counsel was simply conceding the inevitability of a death sentence and was unwilling to investigate. On the one hand, defendant maintained that his trial counsel never asked him about the existence of mitigating witnesses, and advised him that although he could call witnesses at the sentencing hearing, it would probably not be helpful. Defense counsel, on the other hand, stated that defendant was unwilling to have mitigation witnesses testify. Given the contrasting accounts, an evidentiary hearing is necessary to determine whether defense counsel acted in conformity with defendant's wishes or if his client's reluctance was a result of counsel discouraging his client from presenting any mitigating witnesses.

The State also argues that defense counsel's failure to present mitigation was a tactical decision. The State contends that defense counsel made a legitimate choice to rely only on defendant's limited criminal history to convince the sentencing judge that the death penalty was not warranted.

Generally, judicial scrutiny of defense counsel's competency in decisions regarding presentation of mitigating evidence is highly deferential to counsel's judgment. (*Darden v. Wainwright* (1986), 477 U.S. 168, 185-86, 91 L. Ed. 2d 144, 160, 106 S. Ct. 2464, 2474; *People v. Steidl* (1991), 142 Ill. 2d 204, 249.) However, such deference is not warranted where there is proof that the lack of mitigating evidence is due to counsel's failure to properly investigate and prepare the defense. (*Steidl*, 142 Ill. 2d at 249.) In the instant case, the record

indicates defense counsel did not investigate any possible mitigating evidence. Defense counsel admitted in his deposition that he believed the best strategy would be to end the sentencing hearing as quickly as possible and proceed to appeal. The record contains no evidence that counsel's decision not to present mitigation testimony amounted to anything more than a cursory consideration, unsupported by investigation or evaluation. On this record, we reject the contention that defense counsel's failure to present mitigation testimony was a competent strategic decision.

The State argues that even if defense counsel's failure to investigate and present mitigating evidence falls below acceptable professional standards, defendant cannot show prejudice. To prevail on a claim of ineffective assistance of counsel in the context of a death sentencing hearing, the defendant must show that there is a reasonable probability that, absent counsel's deficient conduct, the sentencer would have concluded that the balance of aggravating and mitigating evidence did not warrant death. *People v. Hall* (1993), 157 Ill. 2d 324, 337.

We agree with the State that the heinous nature of the multiple murders for which defendant was convicted is not an inconsiderable aggravating factor. In contrast, defendant had a limited criminal history, and his only previous adjudications were over 15 years ago, as a juvenile. The affiants would provide testimony attesting to defendant's ability to maintain employment in the past 14 years. The affiants would also provide testimony of defendant's violent upbringing contrasted with his ability to maintain caring relationships with family members and his trustworthiness in the eyes of his employers. It is not unreasonable to conclude that mitigation witness testimony might have provided the court with a portrait of the defendant that may have influenced the choice of sentence.

The State argues that this court has frequently refused to find prejudice due to ineffective assistance of counsel in cases involving violent crimes because there is no reasonable probability that mitigation testimony would overcome the aggravating factor of the nature of the conviction. (See *People v. Franklin* (1995), 167 Ill. 2d 1, 25-26; *People v. Mahaffey* (1994), 165 Ill. 2d 445, 466; *People v. Jones* (1991), 144 Ill. 2d 242.) However, in the cases the State relies upon, the defendant's extensive past and subsequent criminal history was so great that it was highly improbable that proposed mitigation evidence would outweigh the aggravating evidence. (See *People v. Jones* (1991), 144 Ill. 2d 242; *People v. Neal* (1990), 142 Ill. 2d 140; *People v. Pistonbarger* (1990), 142 Ill. 2d 353; *People v. Owens* (1989), 129 Ill. 2d 303.) The State also relies upon *People v. Caballero* (1992), 152 Ill. 2d 347, for the proposition that sentencing for a violent multiple-murder conviction will not be influenced by mitigation evidence of a defendant's good character. However, we note that the case the State cites (*Caballero*, 152 Ill. 2d 347) was that defendant's second appeal from dismissal of his post-conviction petition. In the original appeal of the post-conviction petition (*People v. Caballero* (1989), 126 Ill. 2d 248), this court remanded for an evidentiary hearing on the issue of whether defense counsel was ineffective for failure to present mitigating evidence. In the earlier case the court held it was reasonable to believe that despite defendant's multiple-murder convictions, evidence in the affidavits defendant supplied with his post-conviction petition might provide mitigating character evidence sufficient to alter the sentence which warranted an evidentiary hearing. *Caballero*, 126 Ill. 2d at 280-81.

In *People v. Thompkins* we recently remanded for an evidentiary hearing where the defendant alleged trial counsel had failed to adequately investigate

mitigating evidence. (*People v. Thompkins* (1994), 161 Ill. 2d 148.) In *Thompkins*, defendant's wife was his only witness in mitigation at the capital sentencing hearing. Counsel also introduced into evidence more than 50 letters in support of the defendant. In argument before the sentencing court, counsel contended that the defendant should not be sentenced to death because he had not been clearly identified as the gunman. However, in support of his post-conviction petition, Thompkins submitted numerous affidavits of family and friends that would have fortified counsel's contention that the evidence of defendant's role in the offenses was subject to doubt and did not justify sentencing the defendant to death. Accordingly, because defense counsel failed to investigate and unearth evidence contained in the affidavits that had potential to influence the sentence, we remanded for an evidentiary hearing. (*Thompkins*, 161 Ill. 2d at 167-68.) Similarly, we believe that the affidavits submitted with this defendant's post-conviction petition demonstrate that had counsel in this case properly investigated, he would have discovered mitigating evidence with the potential to influence the sentence. Consequently, we believe it appropriate to remand the matter to the circuit court for an evidentiary hearing on this aspect of the defendant's ineffectiveness claim.

Defendant next contends that defense counsel was ineffective for failing to advise him of the trial judge's sentencing propensities resulting in defendant's uninformed jury waiver. Defendant argues that had he been aware of what he alleges were racist tendencies of the sentencing judge, he would have elected sentencing before a jury. However, defendant does not cite any legal support for the contention that defense counsel has a duty to investigate the sentencing propensity of the trial judge. Further, defendant's broad assertions are not supported, and he offers no evidence of racist conduct in

his trial. Defendant's allegation is unsubstantiated and does not warrant a hearing.

Defendant also claims that defense counsel's personal and professional problems created a distraction which caused him to render insufficient representation at sentencing. As we noted above, defendant's same basis for his claim of ineffective assistance at trial is unfounded. Defendant offers no evidence to support this claim in the context of his sentencing hearing, and accordingly, we find this claim also lacks merit.

Finally, we reject defendant's claim that the cumulative effect of counsel's errors at sentencing deprived defendant of his constitutional right to effective assistance of counsel. Because we remand to the circuit court on the issue of counsel's failure to investigate and present mitigating evidence and find no other error, defendant's claim of cumulative error cannot stand.

### III. Jury Waiver at Sentencing

Defendant's next claim is that he was deprived of his right to a fair sentencing hearing because his jury waiver was uninformed. We find this claim is also meritless. Defendant admits in his affidavit that his counsel discussed with him, although briefly, whether or not he preferred to be sentenced by jury or judge. After the verdicts were returned, the trial judge allowed a recess for defendant to consult with his attorney regarding whether or not he chose to have the jury sentence him. When proceedings recommenced, the trial judge thoroughly questioned the defendant regarding his jury waiver. The defendant indicated that he had discussed the matter with his attorney, understood the consequences of his decision, and that the decision was of his own free will. The court found that the defendant fully understood the nature of the waiver and that the waiver was executed voluntarily and without coercion.

Prior to the sentencing hearing, the judge again

interrogated defendant regarding his jury waiver. The defendant indicated on the record that he had discussed the waiver with his attorney and that he had been advised of his options and the consequences of his decision. He also told the court that the jury waiver had not been forced on him, but was his own decision. Defendant's signed jury waiver is also of record. Given these facts, defendant's jury waiver cannot be deemed either involuntary or unknowing.

### IV. Constitutionality of Death Penalty

Defendant raises a series of challenges to the constitutionality of the Illinois death penalty statute, section 9—1 of the Criminal Code of 1961. We agree with the State's argument that these claims are waived for failure to bring them on direct appeal. On direct appeal, defendant raised several different challenges to the constitutionality of the death penalty statute, but raises new arguments in this appeal. However, the defendant fails to provide any valid reason why these claims could not have been raised on direct appeal. Because defendant may not raise issues on collateral review that could have been raised previously, these claims are waived. *People v. Hampton* (1995), 165 Ill. 2d 472.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and reversed in part. The case is remanded to the circuit court for an evidentiary hearing on those portions of defendant's post-conviction petition that allege that the defendant was denied the effective assistance of counsel because of trial counsel's failure to investigate and present mitigation evidence at the capital sentencing hearing.

*Judgment affirmed in part*
*and reversed in part;*
*cause remanded.*