(No. 68897.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHNNY NEAL, JR., Appellant.

*Opinion filed December 20, 1990.—Rehearing denied April 1, 1991.*

Charles M. Schiedel, Deputy Defender, of Springfield, and Charles W. Hoffman, Assistant Defender, of Chicago, both of the Office of the State Appellate Defender, for appellant.

142

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE CALVO delivered the opinion of the court:

The petitioner, Johnny Neal, Jr., appeals from an order of the circuit court of Lake County denying, without an evidentiary hearing, his petition for post-conviction relief. Because the petitioner was sentenced to death for an underlying murder conviction, the present appeal lies directly to this court (107 Ill. 2d R. 651(a)).

Petitioner was convicted of the murder and armed robbery of 63-year-old Lillian Waid. According to the trial evidence—an important part of which consisted of petitioner's confession—petitioner and his wife knew Mrs. Waid and went to her home on the evening of the murder to procure motor oil for petitioner's car. When Mrs. Waid was not looking, petitioner took a set of keys from her kitchen with the intention of later using them to enter her residence and rob her. Petitioner and his wife then left, and while driving to a nearby bar their car developed engine trouble. Petitioner continued on to the bar, instructed his wife to go inside while he fixed the car, then ran back to Mrs. Waid's residence, carrying with him a knife and a 17-inch lead pipe filled with concrete.

Mrs. Waid saw petitioner as he approached, and she asked him what was wrong. Petitioner responded that his car had developed engine trouble and he asked for a ride. After petitioner was admitted to the residence, he displayed the knife and pipe, informing Mrs. Waid that he intended to rob her. As he pushed her toward the bedroom, demanding her money, she pleaded with him not to hurt her. Once inside the bedroom, Mrs. Waid

opened, and reached into, a black file cabinet, apparently looking for money. Petitioner claimed he thought she was reaching for a gun, so he hit her in the head with the pipe. She fell to the floor. Thereafter, petitioner struck her several more times in the head. He said that he "blacked out" after striking her a few times and that he had "a bad headache." After he had finished hitting Mrs. Waid, petitioner apparently stabbed her twice with the knife.

An autopsy later revealed 17 blunt trauma lacerations to Mrs. Waid's head and multiple fractures of her skull. Two stab wounds, which penetrated Mrs. Waid's heart and lung, were inflicted after her death. The cause of death was multiple blunt trauma to the head.

When petitioner found no money—or gun—in the file cabinet, he ransacked the house. He took Mrs. Waid's purse, which contained $25, went to the garage, and removed his bloody shirt. Wearing a tee shirt, he drove Mrs. Waid's car to the bar where he had left his wife. En route, he threw from the window a pair of gloves he had used during the murder and robbery. At the bar, he had a few drinks with his wife, after which they both returned to their apartment. After his wife had fallen asleep, petitioner drove back to the location where he had left Mrs. Waid's car. Retrieving his bloody shirt, Mrs. Waid's purse, the knife and the pipe from the back of Mrs. Waid's car, he placed the lot in a plastic garbage bag, put the bag in his car, then drove Mrs. Waid's car to the Saloon tavern. He left the car unlocked with the keys in it, hoping it would be stolen. Petitioner hitchhiked back to his car and drove it to Lake Michigan. He threw the garbage bag into the lake, then returned home.

Based upon this evidence, a jury found petitioner guilty of murder and armed robbery. The same jury first found petitioner eligible for the death penalty under sec-

tions 9—1(b)(6)(a) through (b)(6)(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(b)(6)(a) through (b)(6)(c)); then, after hearing evidence in aggravation and mitigation in the second phase of sentencing, determined that there were no mitigating factors sufficient to preclude the imposition of the death sentence (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(g)). Pursuant to the jury's determination, the court sentenced petitioner to death for the murder of Mrs. Waid, and sentenced him to 60 years' imprisonment for armed robbery. Petitioner's convictions and death sentence were affirmed on direct appeal (*People v. Neal* (1985), 111 Ill. 2d 180), and the United States Supreme Court denied review (*Neal v. Illinois* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292).

Petitioner then instituted the present action under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*), filing a *pro se* petition for post-conviction relief on January 20, 1987. At petitioner's request, counsel was appointed to represent him. Counsel filed an amended petition for post-conviction relief on June 18, 1987, and on the same day filed a motion for appointment of experts "for the purpose of a forensic psychological analysis" of petitioner. A second amended petition was filed July 2, 1987.

Petitioner raised several claims for relief in his petitions; however, he has abandoned all but two in this appeal. He now contends, as he did below, that (1) he was deprived of the effective assistance of trial counsel by his attorney's failure to investigate or present available evidence in mitigation at his death penalty hearing, and (2) he was deprived of effective assistance of counsel by his attorney's failure to object to the prosecutor's closing argument at the death penalty hearing wherein the prosecutor improperly stated his personal opinion that petitioner should be sentenced to death and invoked his

prior experience and expertise in capital cases. Additionally, petitioner now claims on appeal that the trial court erred "in dismissing the post-conviction petition without having first allowed [petitioner's] request for appointment of a psychological expert where the record contains substantial indications that trial defense counsel was ineffective due to her failure to develop and present mitigating evidence of [petitioner's] mental condition."

On July 31, 1987, the State filed a motion to dismiss. A supplemental motion to dismiss followed on September 4, 1987. Memoranda of law were filed by both sides.

On May 11, 1989, the court entered an order by which it "denied" post-conviction relief. In so doing, the court stated:

> "Defendant alleges that his attorney failed to call favorable character witnesses, and failed to present evidence of his 'excellent' work record at the hearing on aggravation and mitigation at the death penalty phase of his trial.
>
> The information that the defendant alleges should have been presented by his attorney was in fact presented to the court in the form of a pre-sentence report. Therefore, the decision not to present dual evidence was a trial tactic and not to be used as grounds for a claim of ineffective assistance of counsel. [Citation.]"

Although the court did not specifically address petitioner's contention regarding counsel's failure to object to prosecutorial argument at sentencing, the court's comments below appear to deal cumulatively with petitioner's arguments:

> "The actions of the defendant's trial attorney, reviewed both as to each individual allegation of ineffectiveness and viewed as a totality, were within the legal boundaries of effective assistance of counsel and were not *legally* deficient. Nor is there any showing, accept [*sic*] pure speculation, that any actions which, while not legally deficient,

could have been done differently, caused prejudice to the defendant." (Emphasis in original.)

The court never ruled on petitioner's request for appointment of an expert for psychological analysis, and counsel for petitioner did not request such a ruling. Notice of appeal was filed May 30, 1989, and the office of the State Appellate Defender was appointed to represent petitioner on appeal.

We affirm the circuit court's denial of post-conviction relief. Although we cannot, and need not (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387; *People v. Wiedman* (1988), 168 Ill. App. 3d 199, 209), accept *in toto* the circuit court's reasoning, we believe its disposition is correct.

Where, as here, a petitioner has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court, and all other issues which could have been presented to the reviewing court, if not presented, are waived. (*People v. Stewart* (1988), 123 Ill. 2d 368, 375-76; *People v. Jones* (1985), 109 Ill. 2d 19, 23.) In a proper case, where fundamental fairness so requires, strict application of the doctrine of *res judicata* may be relaxed. (*People v. Gaines* (1984), 105 Ill. 2d 79, 91.) We do not believe relaxation of the doctrine is warranted in this case.

In his direct appeal, petitioner raised variations of the issues which he now brings before this court. As he concedes in his reply brief, petitioner, in his direct appeal, argued that the prosecutorial comments at issue here had deprived him of a fair sentencing hearing. This court held the questions had been waived because of trial counsel's failure to object, but then went on to hold that petitioner had not been denied a fair sentencing hearing because the prosecution's evidence was "overwhelming." (*Neal*, 111 Ill. 2d at 196-97.) Petitioner *did not* claim

that trial counsel had been ineffective because she failed to object, even though counsel's omission was evident from the record. Petitioner *did* claim in his previous appeal that trial counsel was ineffective because she failed to present sufficient mitigating evidence at petitioner's capital sentencing hearing. Petitioner noted that the omitted evidence was contained in a presentence investigative report which had been prepared for the court for sentencing on the armed robbery conviction, *after* petitioner had been sentenced on the murder conviction. (*Neal*, 111 Ill. 2d at 198.) This court held, first, that there was no prejudice to petitioner by reason of the alleged error because the information in the presentence report was introduced at the sentencing hearing and, second, that, even if there was error, petitioner had "failed to show a reasonable probability that, absent the assumed error, the jury would have concluded that the death penalty was not warranted." (*Neal*, 111 Ill. 2d at 199.) Thus, this court has determined that mitigating evidence contained in the presentence report, even if omitted at the capital sentencing hearing, would not have changed the outcome. That determination is *res judicata* and cannot be relitigated here.

This court's statement in petitioner's direct appeal notwithstanding, not all of the mitigating evidence in the presentence report was introduced at petitioner's capital sentencing hearing. For example, although some of petitioner's more recent employment history was presented, a comprehensive history is not in evidence. Moreover, although petitioner claimed—in his interview with the author of the report—to have been physically abused by his mother, no such testimony was presented at his capital sentencing hearing. As this court noted on direct appeal (*Neal*, 111 Ill. 2d at 199), petitioner declined to testify at the sentencing hearing, contrary to the advice of his attorney. Petitioner's claims of error notwithstanding, this

court, having thoroughly reviewed the contents of the presentence report, concluded that petitioner had failed to show a reasonable probability of a different result, even assuming a "factual basis for [his] complaint." *Neal*, 111 Ill. 2d at 199.

Petitioner now comes before us again, claiming *this* time that trial counsel failed to "investigate or present"—as opposed to merely "present" (his former contention)—available evidence in mitigation. In *this* appeal, petitioner claims explicitly that he was denied effective assistance of counsel—and implicitly, a "reliable" sentencing hearing—because his attorney failed to object to certain remarks of the prosecutor; in his previous appeal he claimed the remarks denied him a "fair" sentencing hearing. These issues look vaguely familiar. Of course, it is well-settled that "[a] petitioner cannot obtain relief under the Post-Conviction Hearing Act by 'rephrasing previously addressed issues in constitutional terms' in his petition." (*People v. Silagy* (1987), 116 Ill. 2d 357, 371, quoting *Gaines*, 105 Ill. 2d at 90.) We need not address this aspect of the petition, however, because it is readily apparent that, in view of this court's rulings regarding prejudice in his direct appeal (*Neal*, 111 Ill. 2d at 199), petitioner has not, as required, set forth "well-pleaded" facts which, given the procedural posture of this case, would require an evidentiary hearing (see *People v. Caballero* (1989), 126 Ill. 2d 248, 259); nor has he established "a substantial deprivation of Federal or State constitutional rights" which would entitle him to post-conviction relief (*People v. Ruiz* (1989), 132 Ill. 2d 1, 9).

Petitioner, by petition and affidavit, claims that trial counsel "failed to investigate, discuss with [him] or present [certain mitigating] evidence at the death penalty hearing." Petitioner again claims that trial counsel was ineffective, in that she failed to investigate evidence

that he was abused as a child. In support of this claim, he appended to his petition a copy of a police report wherein Ms. Marlene Bereni stated that petitioner was an abused child. In addition, petitioner asserts that counsel was remiss in not investigating, discussing with petitioner, and presenting evidence of his "good record" in the Lake County jail, where petitioner was incarcerated for 4½ months prior to trial, and evidence of his "good relations with co-workers and the quality of [his] work at the E.S. & E. railroad." Petitioner claims he had worked there 5½ years. In addition to his own affidavit, petitioner procured the affidavits of two E.S. & E. co-workers while this matter was pending in the circuit court, and the affidavit of a jailer while this appeal was pending. One of the two co-workers, Edward Graves, stated: "[Petitioner] was a likeable person and a very good worker. I never experienced any arguments or trouble associated with him." Clarence Dube, another co-worker, stated that petitioner was "a good person and a good worker" who, as union steward, had once represented Dube in a disagreement with a yardmaster at the railroad. Lieutenant Charles DeFlippo, a jailer at the Lake County jail, executed an affidavit wherein he stated: "To the best of my recollection, [petitioner] was a model prisoner who, while incarcerated at the jail, caused no disciplinary problems whatsoever for either the staff or other prisoners." DeFlippo's affidavit, as previously mentioned, was procured *after* the circuit court denied postconviction relief and was, therefore, not a factor in the court's ruling. Petitioner was apparently unable to obtain an affidavit from Ms. Bereni—or anyone else for that matter—to substantiate his claim that he was abused as a child.

Thus, in addition to the testimony at sentencing and the material in petitioner's presentence investigative report, which this court previously found insufficient to

warrant a different result, petitioner has now obtained two affidavits which attest that petitioner was generally a "good person and good worker" in the 1970s and the affidavit of a jailer which shows that petitioner was not so unruly as to be remembered as a troublemaker. Although petitioner claims trial counsel failed to investigate favorable mitigating evidence, this is the extent of the evidence petitioner and post-conviction counsel have been able to produce. We simply do not believe this evidence warranted an evidentiary hearing or a departure from this court's ruling on direct appeal.

In contradistinction to petitioner's mitigating evidence, the State possessed a veritable arsenal of aggravating evidence, including, first and foremost, the circumstances of the offense itself. Petitioner brutally murdered a 63-year-old woman who had befriended him. While he was in her home earlier in the day, at which time she gave him some oil for his automobile, petitioner took Mrs. Waid's keys, intending to return later and rob her. Petitioner did in fact return later with a knife and a pipe filled with concrete. After he employed subterfuge to gain entry to her home, petitioner informed Mrs. Waid that he intended to rob her, at which time she pleaded with him not to hurt her. She was apparently looking for money in a drawer in an effort to comply with petitioner's demands, when petitioner struck her on the head with the pipe not once, not twice, but 17 times, causing her death. At one point, petitioner shifted the pipe from his left hand to his right hand in order to get more leverage. After he had bludgeoned her to death, petitioner stabbed Mrs. Waid's lifeless body twice for good measure. The armed robbery netted petitioner $25. He went to great lengths to conceal his commission of the crime. Petitioner was a convicted felon who was on probation at the time he murdered Mrs. Waid. Petitioner had, in the past, demonstrated violent tendencies on one

occasion with his first wife. During a period of marital discord and separation, petitioner broke down the door of his wife's apartment, started to rip her clothing away, then hit her in the side of her face with his fist, breaking a bone in the roof of her mouth and knocking out some of her teeth.

In light of this aggravating evidence, evidence that two co-workers thought petitioner was a good person and that a jailer said petitioner stayed out of trouble while in jail seems rather insignificant indeed. The information alleged in and appended to the post-conviction petition was insufficient to demonstrate prejudice and require a departure from this court's holding in petitioner's direct appeal. Since petitioner has not overcome the prejudice prong of the test announced in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, both of his claims of ineffective assistance of counsel must fail.

Before concluding, we briefly address petitioner's contention that the circuit court erred in dismissing the post-conviction petition without having first allowed petitioner's request for appointment of a psychological expert. On September 23, 1987, both petitioner's post-conviction counsel and an assistant State's Attorney appeared before the circuit judge. At that time, petitioner's attorney agreed to proceed on the State's motion to dismiss even though he had not obtained a ruling on petitioner's motion for appointment of experts "for the purpose of a forensic psychological analysis." It does not appear of record that petitioner ever sought and obtained such a ruling in the circuit court. As we have recently noted, and hope to soon impress upon practitioners within this State, a movant has the responsibility to obtain a ruling on his motion if he wishes to raise a question pertaining thereto on appeal, and where a party, as here, acquiesces in proceeding in a given man-

ner, he is not in a position to claim he was prejudiced thereby (*People v. Schmitt* (1989), 131 Ill. 2d 128, 137). Petitioner indicated he was prepared to proceed on the State's motion to dismiss, knowing full well he had not obtained a ruling on his motion for appointment of an expert. He acquiesced in a procedure which could, and did, result in a dispositive ruling on his petition, without having first obtained a ruling on his motion for an expert. He cannot now claim error.

For the reasons stated, the judgment of the circuit court is affirmed. The clerk of this court is directed to enter an order fixing Wednesday, March 13, 1991, as the date on which the sentence of death entered by the circuit court shall be executed. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 119—5). A certified copy of the mandate in this case shall be furnished by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Affirmed.*