(No. 81435.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TERRANCE TOWNS, Appellant.

*Opinion filed June 18, 1998.*

Marshall J. Hartman, Deputy Defender, and Anna Ahronheim, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and William L. Browers and Penelope Moutoussamy George, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Terrance Towns, appeals from an order of the circuit court of St. Clair County dismissing his amended petition for post-conviction relief without an evidentiary hearing. Defendant's appeal lies directly to this court pursuant to Supreme Court Rule 651(a) (134 Ill. 2d R. 651(a)).

Following a jury trial, defendant was convicted of murder. The jury also found defendant eligible for the death penalty and that there were no mitigating factors sufficient to preclude a sentence of death. Accordingly, the trial court sentenced defendant to death. On direct appeal, this court affirmed defendant's conviction and death sentence. *People v. Towns*, 157 Ill. 2d 90 (1993). The United States Supreme Court denied defendant's petition for a writ of *certiorari*. *Towns* v. *Illinois*, 511 U.S. 1115, 128 L. Ed. 2d 678, 114 S. Ct. 2122 (1994).

On November 22, 1994, defendant instituted the present action under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)), by filing a petition for post-conviction relief. On September 19, 1995, defendant filed an amended post-conviction petition. The State filed a motion to dismiss the amended post-conviction petition. After hearing arguments on the State's motion, the post-conviction judge dismissed the amended petition without conducting an evidentiary hearing.

Defendant now appeals from the dismissal of his amended post-conviction petition without an evidentiary hearing. For the reasons set forth below, we affirm in part and reverse in part the judgment of the circuit court, and remand the cause to that court for an evidentiary hearing.

BACKGROUND

The facts relating to defendant's trial are adequately set forth in this court's opinion on direct appeal. *People v. Towns*, 157 Ill. 2d 90 (1993). We repeat only those facts pertinent to the issues in the amended post-conviction petition. We, however, set forth in some detail the facts relating to defendant's sentencing hearing.

On February 22, 1990, the body of Charles Woodcock, Jr., was found lying on the floor of a convenience store in Fairview Heights, Illinois. At the time Woodcock's

body was discovered, it was determined that $2,000 was missing from the store. The victim's car was also found on fire that same morning. The car stereo had been removed from the victim's car. It was later determined that Woodcock sustained two gunshot wounds to the head, one of which was fatal.

The evidence revealed that defendant had been acquainted with Woodcock prior to his death, and that defendant had been seen on several occasions in the convenience store talking to Woodcock. Defendant made oral and written statements to the police in which he admitted that he shot the victim twice in the head and took the money from the store, drove away in the victim's car, removed the stereo equipment, and set the car on fire. Defendant also admitted that the robbery of the convenience store had been planned for approximately two weeks. After searching the home in which defendant, his mother, and his brother lived, the police discovered in defendant's brother's bedroom a handwritten note, which detailed the plan for the robbery of the convenience store. In addition, the police found a gun which belonged to defendant's mother and which was kept in her bedroom. That gun was later determined to have fired the bullets that killed Woodcock. The stereo equipment that had been removed from Woodcock's car was found in defendant's sister's home.

Defendant testified on his own behalf at trial. He denied any intention of shooting Woodcock because he considered him to be a friend. Rather, defendant insisted that on February 21, 1990, he carried his mother's gun to East St. Louis while visiting his sister's home. Defendant stated that he carried the gun for the purpose of protecting himself from gang members who had previously beaten and harassed him. He still had possession of the gun when he left his sister's home and returned to his own home in Fairview Heights. That evening he

went to the store where Woodcock worked to buy some chips and candy. Woodcock told him to return later that evening to discuss a stereo convention. Defendant returned to the store around 10:30 p.m. While in the store, Woodcock accused defendant of taking some money that Woodcock had left on the counter. Defendant denied taking the money and offered to allow Woodcock to search him. Defendant then realized that he was still carrying his mother's gun, which he had taken with him to East St. Louis. Woodcock picked up the phone and stated that he was going to call the police. Defendant responded by pulling out his gun. As defendant cocked the hammer, his hand slipped and the gun accidentally fired. Defendant then "shook" and "jerked the gun back," and it again fired accidentally a second time. Defendant claimed that he was afraid to call the police. Instead, he took some money from the store and drove away in Woodcock's car. Defendant further denied planning the robbery and denied any connection to the note found in his brother's bedroom.

The jury found defendant guilty of first degree murder. Shortly after defendant's conviction, the trial court began defendant's capital sentencing hearing. At the eligibility phase of the sentencing hearing, the State argued defendant's eligibility on two grounds: (1) the murder was committed during the course of an armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(6)); and (2) the murder was committed in a cold, calculated and premeditated manner pursuant to a preconceived plan, scheme or design to take a human life by unlawful means, and the conduct of defendant created a reasonable expectation that the death of a human being would result therefrom (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(10)). The State offered and the court accepted into evidence defendant's birth certificate, which listed his date of birth as April 24, 1970. Defendant was 19

years of age at the time of the murder. The State also called two witnesses. Lucille Woodcock, the victim's mother, testified that defendant was at her house for dinner on February 18, 1990. Scott Woodcock, the victim's brother, stated that on February 18, 1990, defendant was at the victim's home and looked at the victim's car stereo equipment. The State rested. Defense counsel called defendant to testify as its only witness. Defendant denied any preconceived plan to rob or shoot the victim. After considering the evidence, the jury found defendant eligible for the death penalty based on the fact that defendant was 18 years old or older at the time of the murder, and that the murder occurred during the course of an armed robbery. Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(6).

The following day, the sentencing jury heard evidence relevant to aggravation and mitigation. The State admitted into evidence a certified copy of a criminal information, plea to charge and sentencing in a prior case against defendant. According to the information, on October 30, 1989, defendant committed the offense of burglary in that he entered a motor vehicle with the intent to commit a theft. On February 16, 1990, defendant pleaded guilty to this charge and was sentenced to one year of probation. In connection with this charge, Jonathon Muelchi testified and identified defendant as the person who stole the stereo from his car. The only other witness called by the State was David Jacknewitz, defendant's probation officer. Jacknewitz testified that a person who is placed on probation is not allowed to carry a gun and that defendant was advised of that fact.

Defendant's case in mitigation consisted of the testimony of four witnesses. Defendant's mother, Delores Taylor, testified that defendant had experienced problems with gang members in East St. Louis, who had beaten him. She indicated that the gang members

told defendant that if he stayed around they would kill him. For that reason she moved the family to Fairview Heights. Due to this prior problem with gang members, she claimed that defendant was afraid to go to East St. Louis. According to Taylor, she believed defendant when he said that Woodcock's death was an accident because he would not lie to her. Moreover, she indicated that defendant had always been a good child, and that she did not have any problems with defendant being aggressive because defendant is very loving. Before this incident, she had never seen him with a gun. Taylor also stated that defendant entered the Job Corps in Maryland because he wanted to get away from East St. Louis and the gang members. Defendant stayed with the Job Corps for five or six months but then returned and remained home when she became ill. She indicated that she believed defendant could be rehabilitated because she has had no problems with him. As a final point, Taylor testified that she is a single mother and attends to defendant and her other three children daily.

The defendant's girlfriend's mother, Mary Ann Morgan, testified that she knew defendant for 10 years and had not seen him commit any act of violence. Morgan was aware of defendant's problems with avoiding gang members, who had "jumped" him in the past. She believed that defendant could be rehabilitated. Morgan stated that defendant assisted her in caring for her bedridden husband. She loved defendant for his assistance with her husband.

Perlene Jackson, defendant's grandmother, testified that she was not aware of any other problems that defendant may have had prior to this incident. Defendant has been a good grandson. Jackson believed that if defendant was given an opportunity he could be rehabilitated. Jackson further testified that defendant's mother works most of the time so as to provide for her four chil-

dren. She indicated that defendant's mother tried to do the best for her children. For that reason, she hated to see defendant's mother go through this trauma.

Lastly, Earnestine Jackson, defendant's aunt, testified on behalf of defendant. Jackson stated that she did not know of any violence on the part of defendant. She did notice, however, that defendant had fights with gang members, who picked on him. She indicated that the reason the family moved from East St. Louis was because gang members had "jumped" defendant in the past. Jackson believed that if given the opportunity, defendant could be rehabilitated and become a good citizen.

With the foregoing evidence before it, the jury on November 16, 1990, found no mitigating factors sufficient to preclude the death penalty. The trial judge therefore sentenced defendant to death.

On direct appeal this court affirmed defendant's conviction and his death sentence. *People v. Towns*, 157 Ill. 2d 90 (1993). Defendant subsequently filed an amended post-conviction petition, which alleged that constitutional errors occurred during defendant's trial, sentencing hearing, and post-trial proceedings. Attached to the petition were numerous affidavits from defendant's relatives and friends and a mitigation report, which was prepared by a mitigation specialist. We set forth only those claims that are raised by defendant in this appeal. First, the petition alleged that defendant was deprived of an impartial jury because the prosecutor and a juror did not reveal that they had attended law school together. Second, the petition alleged that defendant was denied effective assistance of counsel during the sentencing hearing because counsel failed to investigate and present certain mitigating evidence. Third, the petition claimed that defendant was deprived of the effective assistance of counsel during post-trial

proceedings by his court-appointed attorney, who failed to raise issues relating to trial counsel's ineffectiveness at the sentencing hearing.

After hearing arguments on the State's motion to dismiss the petition, the trial court dismissed the petition without an evidentiary hearing. The trial judge found that the rule of *res judicata* barred defendant's claim that he had been denied an impartial jury; that defendant had not sufficiently shown ineffectiveness of trial counsel at sentencing; and that waiver barred defendant's claim of ineffectiveness of appointed counsel during post-trial proceedings.

Defendant now appeals the dismissal of his amended post-conviction petition and seeks an evidentiary hearing.

## ANALYSIS

The Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)) provides a remedy to criminal defendants who claim that substantial violations of their federal or state constitutional rights occurred in their original trial or sentencing hearing. See *People v. Guest*, 166 Ill. 2d 381, 389 (1995); *People v. Thompkins*, 161 Ill. 2d 148, 157 (1994). A post-conviction action, however, is not an appeal from an underlying judgment. Rather, it is a collateral attack on a prior conviction and sentence. See *People v. Pecoraro*, 175 Ill. 2d 294, 304 (1997); *People v. Maxwell*, 173 Ill. 2d 102, 106-07 (1996); *People v. Mahaffey*, 165 Ill. 2d 445, 452 (1995). The purpose of the post-conviction proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal. See *People v. Griffin*, 178 Ill. 2d 65, 72-73 (1997); *People v. Whitehead*, 169 Ill. 2d 355, 370 (1996); *Mahaffey*, 165 Ill. 2d at 452. Issues that were raised and decided on direct appeal are barred by the doctrine of *res judicata*. See *Grif-*

*fin*, 178 Ill. 2d at 73; *Mahaffey*, 165 Ill. 2d at 452. Issues that could have been presented on direct appeal, but were not, are waived. See *Griffin*, 178 Ill. 2d at 73; *Mahaffey*, 165 Ill. 2d at 452. Provided that the issue is not precluded by the doctrines of *res judicata* or waiver, an evidentiary hearing is warranted only where the allegations of the post-conviction petition, supported where appropriate by the trial record or accompanying affidavits, make a substantial showing that the defendant's constitutional rights have been violated. See *Pecoraro*, 175 Ill. 2d at 304; *Whitehead*, 169 Ill. 2d at 371; *People v. Coleman*, 168 Ill. 2d 509, 537 (1995). In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are taken as true. See *Maxwell*, 173 Ill. 2d at 107; *People v. Caballero*, 126 Ill. 2d 248, 259 (1989). It is well settled that the trial court's determinations in a post-conviction proceeding will not be disturbed unless manifestly erroneous. See *Griffin*, 178 Ill. 2d at 73; *People v. Steidl*, 177 Ill. 2d 239, 249 (1997); *Guest*, 166 Ill. 2d at 389. With the aforementioned principles in mind, we review the dismissal of defendant's amended post-conviction petition without an evidentiary hearing.

I. Denial of Impartial Jury Claim

Defendant first claims that his amended post-conviction petition makes a substantial showing of a violation of his constitutional right to an impartial jury (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13). In support of this claim, defendant contends that he was unfairly deprived of material information regarding one of the jurors, which in turn hindered his ability to prove juror bias and intelligently exercise his peremptory challenges. The material information at issue concerns the fact that juror Kathleen Moore did not reveal that, 10 years prior to trial, she had attended law

school with the prosecutor at defendant's trial. Defendant concludes that this information showed bias on the part of that juror and the juror's failure to reveal this information impaired his ability to intelligently exercise his peremptory challenges. Defendant contends that an evidentiary hearing on this issue is warranted.

We agree with the trial court that defendant's claim is barred by the doctrine of *res judicata* because the claim was raised and rejected on direct appeal. It is well established that where a petitioner has previously taken a direct appeal from a judgment of conviction, the determinations of the reviewing court are *res judicata* as to all issues actually decided by the court. See *People v. Neal*, 142 Ill. 2d 140, 146 (1990). On direct appeal, defendant argued that he was denied a fair and impartial jury because it was not revealed until after trial that juror Moore had attended law school with the prosecuting attorney. In addressing this issue, this court considered juror Moore's responses during *voir dire* in which she stated that she knew the prosecutor. This court rejected defendant's claim and refused to remand for an evidentiary hearing. We explained that defendant had offered no proof of juror bias other than the fact that, 10 years prior to trial, the prosecuting attorney and one of the jurors attended law school together. This court noted that the juror's responses during *voir dire* established that she was an attorney and that she knew the prosecutor. This court determined that defendant had not established juror bias by juror Moore's failure to also reveal that she and the prosecutor attended the same law school 10 years prior to trial. This court stated that there had been no evidence to suggest that this new evidence was intentionally concealed or was even known to the juror or prosecutor at the time of the trial.

Defendant now argues that the issue is not barred by *res judicata* because his amended post-conviction pe-

tition provides new evidence of juror bias that was not considered on direct appeal. In support of this argument, defendant refers to a newspaper article attached to his petition. This article is dated November 22, 1990, which is six days after the jury rendered its sentencing verdict. It is based on an interview with juror Moore. In the article, juror Moore indicated that she was surprised at being selected for the jury. Juror Moore explained that she and the prosecutor had been law school classmates and that both had graduated from the same law school in 1982. Based on the contents of this article, defendant claims that he makes a substantial showing that there was intentional concealment and contemporaneous knowledge on the part of the juror or prosecuting attorney at the time of jury selection, a fact that this court found lacking in the record on direct appeal. Defendant also claims that *res judicata* does not apply because this court did not fully address the claim raised on direct appeal, namely that defendant was deprived of his right to an impartial jury where his exercise of peremptory challenges was unfairly impaired due to the concealment from defense counsel of the fact that the prosecutor and the juror had been law school classmates. To support this claim, defendant refers to defense counsel's affidavit, which is attached to the petition. In that affidavit, defense counsel states that, if he had known prior to trial of the law school connection, he would have exercised a peremptory challenge. For these reasons, defendant contends that this court should consider his claim and ultimately remand for an evidentiary hearing.

We find that defendant's post-conviction allegations and supporting documents do not warrant our revisiting this issue. Although the actual newspaper article was not contained in the record on direct appeal, the article and the law school connection were referred to in

defendant's post-trial motions, which were a part of the record. Similarly, defense counsel's statements in his post-conviction affidavit reiterate his comments at the post-trial proceedings concerning the use of a peremptory challenge to remove the juror at issue. Moreover, defendant raised essentially the same issue on direct appeal as he now raises in his petition. That issue was adequately addressed by this court on direct appeal. Our holding on this issue on direct appeal is not affected by defendant's argument or additional information. See *People v. Thomas*, 164 Ill. 2d 410, 433-34 (1995) (issue decided on direct appeal was *res judicata* in post-conviction proceedings, despite the defendant's submission of new facts in support of the issue). Consequently, defendant's claim is barred by *res judicata*. See *People v. Stewart*, 123 Ill. 2d 368, 372 (1988). We therefore affirm the circuit court's dismissal of defendant's post-conviction claim regarding denial of an impartial jury.

## II. Ineffective Assistance of Counsel Claims

Defendant raises claims of ineffective assistance of counsel at his capital sentencing hearing and at post-trial proceedings in violation of his federal and state constitutional rights (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). To establish a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, as measured by prevailing professional norms, and (2) counsel's deficient performance so prejudiced defendant that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Albanese*, 104 Ill. 2d 504 (1984).

## A

Defendant first contends that his amended post-

conviction petition makes a substantial showing that he was deprived of his constitutional right to effective assistance of counsel at his capital sentencing hearing. As set forth above, defense counsel presented four mitigation witnesses at the capital sentencing hearing: defendant's mother, grandmother, aunt, and his girlfriend's mother. Their testimony accounted for only 10 pages of trial transcript. In essence, each witness gave similar testimony about defendant's problems with gangs, and testified that defendant is a good person who could be rehabilitated. Defendant now argues that defense counsel was ineffective because he failed to adequately investigate prior to the sentencing hearing and, as a result, failed to present additional mitigating evidence. Defendant asserts that this additional mitigating evidence was compelling and readily available to defense counsel. Defendant therefore requests that we remand for an evidentiary hearing on his claim.

In addressing whether defendant's petition warrants an evidentiary hearing, we must determine whether that petition makes a substantial showing that defendant was deprived of effective assistance of counsel at his sentencing hearing. Our inquiry therefore focuses on whether defendant's petition makes a substantial showing of both the deficient performance and prejudice prongs of the *Strickland* standard.

In support of his claim of deficient performance at the sentencing hearing, defendant relies on a mitigation report and numerous affidavits attached to his amended post-conviction petition. The mitigation report was prepared by a mitigation specialist, Caryn Platt Tatelli, who had conducted an investigation into defendant's background. The report is based on interviews and documents, including employment, educational, psychiatric and medical records of defendant and close family members. The mitigation report provides a family his-

tory of defendant, which Tatelli states is characterized by "a pervasive history of child abuse and maltreatment, coupled with substance abuse and mental illness." According to Tatelli, the prevalence of substance use, violence and abuse within defendant's family history laid the groundwork for defendant's developmental experiences, which were further influenced by the "poverty-stricken, gang infested, and highly violent area of East St. Louis" in which defendant was raised. Tatelli opines that defendant did not have the guidance and nurturing normally associated with childhood. Tatelli concludes that the terrible circumstances within defendant's family are important issues that should have been raised at the sentencing hearing.

Defendant's petition also attached affidavits from a number of relatives and friends, who stated that they had not been contacted by defense counsel before the sentencing hearing, and that they would have been willing to testify on defendant's behalf. These affidavits recount defendant's abusive and violent childhood, including specific incidents of abuse against defendant. The affiants attest that defendant had been physically and psychologically abused by his stepfather, who frequently beat defendant merely because defendant was not his son. Defendant's stepfather repeatedly referred to defendant as a "bastard." The affidavits also point out that defendant witnessed his stepfather's acts of abuse and infidelity against his mother. The affidavits further portray defendant's home life by noting his stepfather's open and notorious abuse of alcohol and drugs, which he often sold from the family home in the presence of defendant. According to several affiants, defendant's mother was chronically absent from the home due to excessively long work hours. The affiants stated that defendant's mother also suffered from recurring mental health problems.

Defendant contends that defense counsel's failure to investigate and present the aforementioned mitigating evidence concerning his background constitutes deficient performance by defense counsel. In his post-conviction affidavit, defendant states that defense counsel did not ask him for any information that would lead to mitigation witnesses who could have given quality testimony pertaining to various aspects of his life. Defendant's affidavit also states that defense counsel did little or no investigation prior to trial regarding mitigating witnesses. Rather, defense counsel waited until the last moment to obtain mitigating witnesses for sentencing and then failed to question those witnesses about what might be considered mitigating. Moreover, defendant notes that his mother, Delores Taylor, and his girlfriend's mother, Mary Ann Morgan, submitted affidavits stating that defense counsel did not prepare them for the sentencing hearing. Taylor stated that, after defendant's conviction, she called defense counsel, who then informed her that he would ask her to testify at sentencing. This constituted the extent of their conversation. Morgan stated that defense counsel merely informed her that she would be a character witness. In each of their affidavits, Taylor and Morgan indicate that, had defense counsel prepared them, they would have provided information about defendant's family history at the sentencing hearing.

Defendant also claims that defense counsel's actions preceding the sentencing hearing reveal the extent of counsel's lack of investigation and preparation of mitigating evidence. Following the jury's eligibility verdict, the trial court sought to immediately proceed to the aggravation/mitigation phase of the sentencing hearing. Defense counsel, however, requested a continuance to obtain some mitigating witnesses that he intended to call that evening. Defense counsel informed the judge

that "there might be others that we might be able to raise over night by questioning the mother and the family, people and [defendant] as well to jog the memory as to people who might be able to testify." The trial court questioned whether defense counsel would be able to accomplish this task in one night. The trial court also expressed surprise that defense counsel was not prepared to proceed to the second phase of the sentencing hearing given the parties' understanding that the court sought to continue to the aggravation/mitigation phase immediately following the jury's eligibility determination. Defendant contends that defense counsel's statements reveal that he did not begin to search for mitigation until the last possible moment.

It is well settled that counsel has a duty to make reasonable investigations for potential sources of mitigating evidence to present at the capital sentencing hearing, or must have a legitimate reason for failing to make a particular investigation. See *Strickland*, 466 U.S. at 690-91, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066; *Griffin*, 178 Ill. 2d at 86; *People v. Howery*, 178 Ill. 2d 1, 55 (1997); *People v. Orange*, 168 Ill. 2d 138, 170 (1995); *People v. Ruiz*, 132 Ill. 2d 1, 27 (1989). If mitigating evidence exists, counsel then has a duty to introduce it in support of defendant. See *Griffin*, 178 Ill. 2d at 86; *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989). However, where counsel has conducted an adequate investigation, the failure to present mitigating evidence does not by itself demonstrate deficient performance. See *Griffin*, 178 Ill. 2d at 86; *Howery*, 178 Ill. 2d at 55; *People v. Ruiz*, 177 Ill. 2d 368, 385 (1997); *Steidl*, 177 Ill. 2d at 257; *Orange*, 168 Ill. 2d at 167-68; *Coleman*, 168 Ill. 2d at 535; *People v. Perez*, 148 Ill. 2d 168, 186 (1992).

The State responds to defendant's claims by arguing that defense counsel conducted a thorough investigation

because he obtained a sanity evaluation of defendant prior to trial. The State refers to the sanity evaluation report prepared by Dr. Daniel Cuneo, who found that defendant was legally sane at the time of the offense. The State contends that defendant failed to disclose mitigating evidence at the time of Dr. Cuneo's report. The State therefore argues that any unfamiliarity on defense counsel's part as to mitigating evidence was attributable to defendant's failure to timely advise counsel of potential mitigation. The State suggests that defendant hindered defense counsel's discovery of additional mitigating evidence by withholding such evidence from defense counsel. For these reasons, the State insists that defense counsel's performance should not be considered deficient.

The State's argument is without merit. A pretrial sanity evaluation is not a substitute for conducting a mitigation investigation. Moreover, defense counsel's duty to investigate is not limited to matters about which defendant has told defense counsel. The duty to make a reasonable investigation is imposed on counsel and not the defendant. See *Perez*, 148 Ill. 2d at 193 (where the defendant is not cooperating in the mitigation investigation, counsel's duty is not to decline to investigate mitigation, but to search for as much information about the defendant as he can and confront the defendant with that information); *Emerson v. Gramley*, 91 F.3d 898, 906 (7th Cir. 1996) (counsel has a duty to investigate mitigation even where the defendant indicates that he does not want mitigating evidence introduced). Here, there is no factual basis in the record to support an inference that defendant was opposed to the introduction of mitigation. Moreover, there is no evidence in the record that defendant withheld mitigating information from defense counsel. See *Orange*, 168 Ill. 2d at 170 (factual dispute between counsel's deposition and the

defendant's affidavit regarding counsel's reasons for failing to investigate and present mitigation warrants an evidentiary hearing). Consequently, the evidence before us does not support the State's argument.

Rather, defendant's petition and supporting affidavits along with defense counsel's own statements at the sentencing proceedings appear to show that defense counsel waited until after defendant's conviction to investigate possible evidence in mitigation and apparently confined his inquiry to minimal conversations with the four witnesses who testified in mitigation. It has been held that, in a capital case, where the defendant's life is at stake, it may be objectively unreasonable for an attorney to wait until after a guilty verdict to begin to prepare for the imminent capital sentencing hearing. See *Caballero*, 126 Ill. 2d at 278 (counsel's performance was deficient where counsel waited until after the defendant's conviction to investigate possible evidence in mitigation and apparently confined his inquiry to a one-hour group interview with the witnesses suggested by the defendant's family); see also *Hall v. Washington*, 106 F.3d 742, 746-51 (7th Cir. 1997) (counsel's performance held to be deficient where counsel failed to interview the defendant about the hearing or potential mitigating witnesses and undertook no independent investigation to gather mitigating evidence); *Glenn v. Tate*, 71 F.3d 1204, 1207-08 (6th Cir. 1995) (counsel's representation found to be objectively unreasonable where counsel made no attempt to prepare for the sentencing phase until after the jury returned its guilty verdict and as such the jury received virtually no information about the defendant's history, character or background); *Blanco v. Singletary*, 943 F.2d 1477, 1500-03 (11th Cir. 1991) (counsel's performance fell below an objective standard of reasonableness where counsel's investigation consisted of leaving phone mes-

sages for potential witnesses following the guilty verdict and then failing to conduct interviews); *Cunningham v. Zant*, 928 F.2d 1006, 1017-18 (11th Cir. 1991) (counsel's performance was deficient where counsel interviewed mitigation witnesses on the eve or day of trial and spoke to one witness for only a few moments). We note that we are not suggesting that defense counsel here was required to "scorch-the-earth" in his investigation of mitigating evidence. See *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996). Rather, counsel was obligated to conduct a reasonable investigation.

The State also argues that defense counsel's performance should not be considered deficient because counsel developed and presented a sound strategy for the sentencing hearing. The State posits that defense counsel failed to present any additional mitigating evidence because such evidence would have detracted from counsel's strategy by opening the door to additional avenues of aggravation. The State contends that the affidavits now offered by defendant include aggravating evidence the jury never heard concerning defendant's advantaged upbringing and intelligence. The State argues that such evidence would have shown that, despite his advantages and intelligence, defendant chose to be a "predator." Instead of presenting such aggravating evidence, the State contends, defense counsel made a legitimate strategic decision to focus on defendant's youth, lack of significant criminal history and rehabilitation potential to convince the sentencing jury that the death penalty was not warranted. The State claims that defense counsel's choice of mitigating witnesses supported that strategy. The State therefore concludes that counsel's performance cannot be condemned for failing to pursue a different strategy or because counsel's strategy did not succeed.

In considering the State's claim, we note that courts

are highly deferential in reviewing counsel's strategic decisions regarding the presentation of mitigating evidence. See *Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065; *Steidl,* 177 Ill. 2d at 257; *Orange,* 168 Ill. 2d at 170. In fact, strategic choices made after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. See *Strickland,* 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066; *Griffin,* 178 Ill. 2d at 86. Moreover, an informed decision by counsel not to present certain mitigating evidence can represent a valid strategic choice, entitled to judicial deference, where the evidence is potentially damaging to the defendant. See *Burger v. Kemp,* 483 U.S. 776, 793-95, 97 L. Ed. 2d 638, 656-57, 107 S. Ct. 3114, 3125-26 (1987); *Ruiz,* 177 Ill. 2d at 385; *Coleman,* 168 Ill. 2d at 535; *Perez,* 148 Ill. 2d at 186. Such deference is not warranted, however, where the lack of mitigating evidence presented is not attributable to strategy but rather to counsel's failure to properly investigate mitigation and prepare a defense. See *Howery,* 178 Ill. 2d at 56; *Steidl,* 177 Ill. 2d at 257; *Orange,* 168 Ill. 2d at 170. Consequently, counsel's presentation of mitigation is not deemed to be a legitimate strategy without a reasonable investigation into mitigating circumstances. See *Ruiz,* 177 Ill. 2d at 385; *Coleman,* 168 Ill. 2d at 535-36; see also *Hall,* 106 F.3d at 749-50; *Jackson v. Herring,* 42 F.3d 1350, 1367 (11th Cir. 1995); *Baxter v. Thomas,* 45 F.3d 1501, 1514 (11th Cir. 1995); *Pickens v. Lockhart,* 714 F.2d 1455, 1467 (8th Cir. 1983).

In the instant case, defendant's petition and supporting affidavits make a substantial showing that defense counsel's limited presentation of mitigating evidence at the sentencing hearing was not the result of a strategic decision preceded by a reasonable investigation. The record before this court contains no evidence that counsel's decision not to present additional mitigat-

ing evidence was a strategic decision. We acknowledge that when the drawbacks of potential mitigating evidence appear obvious from the record, it can be assumed that counsel decided not to present evidence for such reasons. See *Ruiz*, 132 Ill. 2d at 26. Here, however, there appears to be no obvious disadvantage in the additional mitigating evidence. On this record, we reject the State's claim that defense counsel's failure to present the additional mitigating evidence was a strategic decision. The mitigating evidence offered by defense counsel at the sentencing hearing portrayed defendant as an advantaged youth. The affidavits attached to defendant's petition may have provided the jury with an entirely different portrait of defendant that could have influenced the choice of sentence. See *Perez*, 148 Ill. 2d at 188-89 (the State's theory that counsel reasonably declined to introduce school reports at the sentencing hearing because they contained aggravating evidence that the defendant was a "troublemaker" was not reasonable strategy where counsel did introduce a psychological report at sentencing which portrayed the defendant as much worse than a "troublemaker"). Given the record before us, we decline to assume that defense counsel's alleged failure to present the additional mitigating evidence at issue represented a legitimate strategic decision.

The State further argues that defense counsel was not deficient in omitting evidence regarding defendant's troubled childhood because such evidence was not inherently mitigating. As support for this argument, the State relies on this court's decision in *People v. Sanchez*, 169 Ill. 2d 472 (1996), which was also relied on by the trial court in this case as its rationale for dismissing defendant's amended post-conviction petition without an evidentiary hearing. The State insists that *Sanchez* stands for the proposition that evidence of a troubled childhood

is not mitigating because it can be viewed as indicative of a defendant's future dangerousness.

In *Sanchez*, trial counsel presented significant evidence in mitigation at the sentencing hearing describing defendant's harsh upbringing, development and family environment. More specifically, the evidence showed that the defendant had been abused as a child, had a good work record, had no prior criminal history, and had treated his family well. In fact, the jury was presented with detailed evidence of the defendant's father's cruelty toward the defendant, as well as animals. The jury also learned that despite the defendant's illiteracy, he had been employed at the same job for 15 years. After considering the mitigation evidence that had been presented to the jury, this court noted that it was so compelling as to persuade one justice to dissent from the affirmance of the sentencing on direct appeal. *Sanchez*, 169 Ill. 2d at 490. Accordingly, this court held that the additional evidence obtained by post-conviction counsel relating to the defendant's difficult childhood was merely cumulative of the substantial mitigation presented to the jury and would not have made a difference in the sentence. *Sanchez*, 169 Ill. 2d at 490-91. It was under these circumstances that the court noted that evidence of a troubled childhood is not "inherently mitigating." *Sanchez*, 169 Ill. 2d at 491. Therefore, the court concluded that counsel's substantial presentation in mitigation represented a strategic choice rather than deficient performance. *Sanchez*, 169 Ill. 2d at 492.

The *Sanchez* court's characterization of evidence of a troubled childhood as not "inherently mitigating" must be considered in context. In *Sanchez*, counsel clearly had conducted a thorough investigation and was aware of the defendant's background, given that counsel presented testimony describing the defendant's harsh background. As such, counsel's decision not to present

additional mitigation evidence of the defendant's troubled childhood can be viewed as strategic and therefore not deficient performance. Here, unlike *Sanchez*, defendant makes a substantial showing that defense counsel made no attempt to investigate or present evidence of defendant's background from sources readily available to defense counsel. As such, we cannot find at this stage that defense counsel made a strategic choice among the available options. See *Perez*, 148 Ill. 2d at 192-94 (defendant satisfied performance prong by showing counsel's failure to investigate and present mitigating evidence of defendant's background was not the product of a thorough investigation and thus not a strategic decision). Moreover, we find that the *Sanchez* court's characterization of a troubled childhood as not "inherently mitigating" should not be construed to mean that such evidence is never mitigating. In some circumstances, it can be mitigating. Nevertheless, counsel cannot make the strategic decision that such evidence is not mitigating in a particular case unless counsel investigates and considers that evidence. Here, defendant has made a substantial showing that defense counsel did not consider defendant's troubled childhood. Given the differences in counsel's presentation of mitigation in *Sanchez* and in this case, we determine that *Sanchez* does not preclude a finding of deficient performance by defense counsel in this case.

After considering defendant's petition and supporting affidavits along with the record before us, we find that defendant has made a substantial showing that defense counsel's performance at the sentencing hearing was deficient. Accordingly, the amended post-conviction petition makes a substantial showing of the performance prong of the *Strickland* test.

Having considered the performance prong of the *Strickland* standard, we must further examine whether

defendant has made a substantial showing that he was prejudiced by counsel's allegedly deficient performance. In establishing prejudice, defendant must show that there is a reasonable probability that, absent counsel's deficient performance, the sentencer would have concluded that the balance of aggravating and mitigating factors did not warrant death. See *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69; *Caballero*, 126 Ill. 2d at 279. In essence, we must determine whether counsel's allegedly deficient performance so prejudiced defendant as to deny him a fair sentencing hearing, which in turn affected the reliability of his sentence. See *Strickland*, 466 U.S. at 695-96, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2069; *Howery*, 178 Ill. 2d at 62; *Ruiz*, 177 Ill. 2d at 388.

Defendant claims that his amended petition makes a substantial showing that defense counsel's deficient representation deprived defendant of an individualized assessment of his character and that but for counsel's deficient performance, there is a reasonable probability that the jury would have concluded that the balance of aggravating and mitigating factors did not warrant the death penalty. In support of his contention, defendant claims that the mitigation evidence which defense counsel unreasonably failed to present was substantial, as evident in the numerous post-conviction affidavits from close relatives and friends. As more fully explained above, these affidavits reveal detailed aspects of defendant's troubled childhood, which among other things consisted of physical and psychological abuse by his stepfather. Defendant argues that such mitigating evidence would have provided the jury with a portrait of defendant that may have influenced the choice of sentence.

The question before us is whether evidence of defendant's troubled childhood would have substantially

added to the amount of mitigation before the jury. See *Caballero*, 126 Ill. 2d at 280. In answering this question, a reviewing court must balance the aggravating and mitigating circumstances. See *Howery*, 178 Ill. 2d at 61-62; *Coleman*, 168 Ill. 2d at 538. Initially, we note that a capital sentencing hearing constitutionally requires an individualized assessment of the circumstances of the offense and the character of the offender. See *Eddings v. Oklahoma*, 455 U.S. 104, 110-12, 71 L. Ed. 2d 1, 8-9, 102 S. Ct. 869, 874-75 (1982); *Thompkins*, 161 Ill. 2d at 166; *Ruiz*, 132 Ill. 2d at 25. Consequently, the sentencer may not be prevented from considering relevant mitigating evidence concerning the offender or circumstance offered by the defense. See *Thompkins*, 161 Ill. 2d at 167; *Ruiz*, 132 Ill. 2d at 25. The additional mitigating evidence relied on by defendant in the instant case is relevant because it concerns defendant's background. Evidence of a defendant's background, including family history, parental abuse and neglect, is important to the sentencing decision and can be an influential mitigating factor. See *Ruiz*, 177 Ill. 2d at 388; *Coleman*, 168 Ill. 2d at 537; *Perez*, 148 Ill. 2d at 194-95; see also *Middleton v. Dugger*, 849 F.2d 491, 495 (11th Cir. 1988); *Pickens*, 714 F.2d at 1466. This evidence, however, must be balanced against the aggravation evidence presented by the State during the sentencing hearing.

The evidence presented in aggravation by the State was far from overwhelming. The State focused on defendant's crime in this case, arguing that the murder in the course of an armed robbery arose from a preconceived plan and involved the murder of a friend. The State also noted defendant's prior conviction for burglary. That conviction arose out of defendant's stealing of a car stereo. Defendant was sentenced to one year of probation for that offense. The State argued that given

the close proximity between the murder and the sentence of probation, defendant could not be rehabilitated. Measured against this aggravation, it is reasonable to conclude that the additional mitigation evidence had the potential to influence the sentence. The additional evidence of defendant's background contrasts with the portrayal given of defendant at the sentencing hearing. The mitigation witnesses presented at the sentencing hearing portrayed defendant as being raised by a hardworking single mother who provided defendant with an advantaged childhood. The sentencing jury was therefore given the impression by the mitigating witnesses that defendant came from a good, caring family living in a bad neighborhood, and that the family had tried its best with defendant. As such, it was implied that defendant was led to become a murderer for no apparent reason. The proposed mitigating evidence appears to provide a more complete representation of defendant's background and character.

We note that this court has addressed post-conviction claims alleging ineffectiveness of counsel at the capital sentencing hearing. See *People v. Steidl*, 177 Ill. 2d 239 (1997); *People v. Orange*, 168 Ill. 2d 138 (1995); *People v. Thompkins*, 161 Ill. 2d 148 (1994); *People v. Caballero*, 126 Ill. 2d 248 (1989). In these cited cases, we held that the defendant's post-conviction petition and accompanying affidavits made a substantial showing that counsel's performance was deficient because of counsel's failure to investigate and present mitigating evidence. See *Steidl*, 177 Ill. 2d at 259; *Orange*, 168 Ill. 2d at 171; *Thompkins*, 161 Ill. 2d at 167; *Caballero*, 126 Ill. 2d at 279. We further held that, despite the violent nature of the offenses and the fact that the defendant had been convicted of multiple murders, counsel's failure to investigate and present mitigating evidence so prejudiced the defendant as to warrant an evidentiary hear-

ing. See *Steidl*, 177 Ill. 2d at 260; *Orange*, 168 Ill. 2d at 173; *Thompkins*, 161 Ill. 2d at 167-68; *Caballero*, 126 Ill. 2d at 282. We find those cases to be instructive in considering defense counsel's performance in this case and its effect on defendant's sentence, particularly where defendant here lacked a significant prior criminal history.

The State argues that the proposed mitigation was cumulative of the mitigation testimony presented at the sentencing hearing. The record belies this contention. The testimony provided by the mitigation witnesses at the sentencing hearing was devoid of detail regarding defendant's life. The jury received no evidence of the years of physical and psychological abuse endured by defendant at the hands of his stepfather. Nor did the jury receive any other information about defendant's family background which might have led them to understand who he was or what might have led him to commit a murder. The proposed mitigation evidence provides a more complete picture of defendant's background including specific details. Such additional evidence in mitigation therefore cannot be considered cumulative to the evidence presented by defense counsel at the sentencing hearing. See *Thompkins*, 161 Ill. 2d at 167 (mitigation submitted in support of post-conviction claim of ineffective assistance of counsel at sentencing was not cumulative of mitigation evidence introduced at the sentencing hearing which consisted of testimony of one witness and 56 letters in support of the defendant); *Ruiz*, 132 Ill. 2d at 26 (the testimony which counsel failed to introduce would not have been cumulative of evidence already presented at trial or sentencing, and the testimony of those witnesses not called would have provided a portrayal of the defendant that was not apparent from the evidence already admitted).

For the above stated reasons, we hold that defen-

dant's petition and accompanying affidavits, when properly taken as true, make a substantial showing that defense counsel's performance was deficient at the sentencing hearing, and that defendant was prejudiced by such representation. The trial court's dismissal without an evidentiary hearing of the petition's claim of ineffective assistance of counsel at sentencing was manifestly erroneous. We therefore remand for an evidentiary hearing on the amended post-conviction claim of ineffective assistance of counsel at sentencing.

### B

Although we find that defendant's petition makes a substantial showing of ineffectiveness regarding defense counsel's failure to investigate and present additional mitigating evidence, we determine that defendant's ineffectiveness claims regarding closing argument are waived. Defendant criticizes defense counsel's performance by contending that his closing argument exhibited no coherent theory of mitigation. Instead of focusing on the mitigation presented at sentencing, defendant claims, counsel's closing argument consisted of rambling, speculative remarks that focused on abstract and irrelevant religious appeal and residual doubt about defendant's guilt. Defendant therefore maintains that defense counsel subverted any chance for a nondeath verdict by making such irrelevant appeals during closing argument. This argument relies on mitigating evidence that was contained in the record on direct appeal. Consequently, claims regarding defense counsel's ineffectiveness in closing argument could have been raised and considered on direct appeal. We therefore find that defendant's allegations with respect to counsel's closing argument are waived. See *Stewart*, 123 Ill. 2d at 372.

### C

In a related but separate argument, defendant

contends that he was deprived of the right to effective assistance of counsel at post-trial proceedings. Defendant claims that his appointed, post-trial counsel was ineffective for failing to investigate and present defendant's claim of ineffective assistance of counsel at the sentencing hearing in the post-trial motions. Defendant premises this allegation on post-trial counsel's failure to investigate and present the additional mitigating evidence, referred to previously in this opinion, as support for a post-trial claim of ineffective assistance of trial counsel. Defendant concludes that he was prejudiced by post-trial counsel's performance because, had the trial judge been apprised of trial counsel's deficient performance at sentencing, there is a reasonable probability that the trial judge would have granted defendant a new sentencing hearing.

We note that defendant's claim regarding post-trial counsel is premised on whether trial counsel was ineffective at sentencing. In dismissing defendant's amended post-conviction petition without an evidentiary hearing, the trial court stated that defendant's claim regarding post-trial counsel was waived because it could have been raised on direct appeal. We disagree with the trial court's finding because the claim is based on evidence that was not part of the record on direct appeal, namely the additional mitigating evidence set forth in defendant's amended post-conviction petition. Nevertheless, we are unable to address this issue at this time. As pointed out above, we remand to the trial court for an evidentiary hearing regarding defendant's claim of trial counsel's alleged ineffectiveness at the capital sentencing hearing. It is clear that, unless trial counsel's performance at the sentencing hearing is found to be ineffective, defendant has suffered no prejudice from post-trial counsel's failure to challenge the competency of trial counsel at sentencing during post-trial proceed-

524

ings. See *People v. Foster*, 168 Ill. 2d 465, 474 (1995) (defendant has suffered no prejudice from appellate counsel's failure to raise issues on direct appeal where the underlying issues are not meritorious). Because we remand for an evidentiary hearing on defendant's underlying issue, we are not able to determine whether post-trial counsel was ineffective for failing to raise ineffectiveness of trial counsel. We therefore express no opinion on the merits of this issue.

### CONCLUSION

For the reasons stated, the judgment of the circuit court of St. Clair County dismissing defendant's post-conviction petition without an evidentiary hearing is affirmed in part and reversed in part. We remand this cause to the circuit court for an evidentiary hearing on the portion of defendant's post-conviction petition that alleges that defendant was denied the effective assistance of counsel at his capital sentencing hearing because counsel failed to adequately investigate and present additional sources of mitigating evidence.

*Affirmed in part and reversed in part; cause remanded.*