2020 IL App (1st) 172152-U

No. 1-17-2152

Order filed August 7, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 7838 |
| | ) | |
| EDUARDO PATINO, | ) | Honorable |
| | ) | James N. Karahalios, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We reverse the circuit court's summary dismissal of defendant's postconviction petition where the petition established an arguable claim of ineffective assistance of counsel.

¶ 2    Defendant Eduardo Patino appeals from the circuit court's summary dismissal of his petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), arguing that his petition set forth a meritorious claim for ineffective assistance of trial counsel that was not barred by *res judicata*. We reverse and remand for second-stage proceedings.

¶ 3     Defendant was arrested on March 25, 2012, and charged by indictment with two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2012)), alleging that he committed sexual acts with V.S., who was between 14 and 17 years old, at such time that he was at least 5 years older than her. Prior to his bench trial, defendant raised the affirmative defense of mistake of age.

¶ 4     At trial on January 10, 2013, defense counsel's opening statement noted that "our defense today is mistake of age." Defense counsel further asserted in his opening statement that V.S. had previously told defendant that she was 18 years old.

¶ 5     V.S. testified that she was 15 years old on March 25, 2012. She maintained a Facebook account that was active from January 2012 through March 25, 2012. In March 2012, the "about" page for her Facebook account indicated that she was a freshman at a named high school and was scheduled to graduate in 2015.

¶ 6     Defendant contacted V.S. on Facebook in January 2012, and the two communicated via Facebook between January and March 2012. They discussed "partying and hanging out." On the night of March 24, 2012, into the early morning of March 25, 2012, V.S. told defendant about a party hosted by her friend, who was a freshman in college. She asked defendant to drive her to the party and gave him her phone number so they could coordinate via text message.

¶ 7     Defendant picked up V.S. at approximately 1:30 a.m. on March 25, 2012. V.S. exited her house by walking through the side door of the kitchen while her parents slept. Defendant drove a white vehicle. She had not seen him in person prior to entering the vehicle. V.S. wore a "hot pink [p]encil [s]kirt and a black tank top with a black coat." When they arrived at the party, V.S. said

hello to her friends, who were all between 15 and 19 years old. At the party, others made "fun" of V.S. and defendant repeatedly defended her by "saying that [she] was 15."

¶ 8    V.S. asked defendant to drive her home at approximately 4:30 a.m. so she would arrive before her father woke up. Defendant agreed. When the two reached his vehicle, defendant said he would not drive V.S. home unless she kissed him. Defendant then entered the driver seat and V.S. entered the passenger seat. Defendant again said he would not drive her home unless she kissed him. V.S. kissed defendant.

¶ 9    Defendant moved to beneath the front passenger seat and initiated oral sex with V.S. V.S told him to stop, but he continued for a "few minutes," then positioned himself on top of V.S. and "put his penis inside" her vagina.

¶ 10    A police officer flashed a light inside defendant's vehicle. Defendant put his pants on and returned to the driver's seat. V.S. put her clothes on and spoke with the officer, claiming she was 18 years old because she was scared of receiving a ticket, which would anger her parents. She also said she wanted to go home. V.S. then spoke to a second officer, to whom she told her real name and age. The officers took her to the police station. Afterwards, V.S. went home and then went to the hospital.

¶ 11    V.S. identified People's Exhibit No. 1 as printouts from Facebook, including a printout of her Facebook "wall" page as it appeared on March 25, 2012, which indicated she was a freshman in high school.[1] Other printouts included her communications with defendant between January 2, 2012 and March 25, 2012. She identified People's Exhibit No. 2 as a photograph of her taken at

---

[1] The exhibits entered into evidence at trial were impounded by the circuit court. Defendant's postconviction petition includes an "Index to Exhibits" with an entry labeled "Appellate record (on disc)," but neither that disc nor any of the trial exhibits have been included in the record on appeal here.

the Child Advocacy Center on March 25, 2012. V.S. denied telling defendant she was 18 years old.

¶ 12     On cross-examination, V.S. testified that the first page of her Facebook account, her "information page," did not indicate her age or that she was a freshman in high school. She did not tell defendant her age in any of their Facebook communications, but did tell him she liked "rolling at raves." According to V.S., a rave is a "big party type club thing where people would be dancing and drinking," and "rolling" means taking ecstasy. She also told defendant she had been to Medusa's Club, an "18 and up" night club. V.S. could not recall who initiated Facebook contact on March 24, 2012.

¶ 13     V.S. wore make-up when defendant picked her up but denied trying to make herself look older. She told him she was 15 years old twice, once over the phone before defendant picked her up, and again when she entered his vehicle. She told defendant she wanted to leave the party at approximately 5 or 5:15 a.m. Some of her friends at the party had vehicles. She did not ask a friend for a ride when defendant initially refused to drive her home unless she kissed him. V.S. asked defendant to stop during the sexual activity, but did not scream or attempt to exit the vehicle, and defendant did not hold her down.

¶ 14     The officer used a bullhorn to order defendant out of the vehicle. Defendant, who had already started driving away, stopped the vehicle at this point, and V.S. exited and went into another officer's vehicle. Her hospital examination revealed no bruises, cuts, or scratches. She wore different clothes to the party than those depicted in People's Exhibit No. 2.

¶ 15     On redirect, V.S. testified that defendant told her he was 17 years old when they were in his vehicle.

¶ 16     Wheeling police officer Richard Giltner testified that at approximately 4:48 a.m. on March 25, 2012, he was driving a marked police vehicle near the 200 block of 2nd Street in Wheeling when he observed an illegally parked white vehicle "moving up and down in a rocking motion." Giltner drove towards the vehicle and activated his spotlight. His dashboard camera recorded the ensuing encounter. Giltner identified People's Exhibit No. 3 as a disk containing the dashboard camera video.

¶ 17     After spotlighting the vehicle from six feet away, Giltner observed a male inside the vehicle on the passenger side with two legs in the air on either side of him. The male turned back towards the driver seat, pulled up his pants, and started the vehicle. Giltner then noticed a female in the passenger seat, "adjusting her clothing" and "fixing her hair." She made a gesture towards defendant that indicated to Giltner she wanted defendant to drive away. Defendant started driving and attempted to pass Giltner's vehicle, at which time Giltner rolled down his window and told defendant to stop.

¶ 18     Defendant rolled down his window, apologized, and said he was going to drive the female home. Giltner instructed defendant to park, which he did. Giltner exited and approached defendant's vehicle. The female appeared "very young" and was "nervous and hesitant." Defendant gave Giltner his driver's license, which indicated he was born on February 12, 1988. The passenger did not produce identification or provide her date of birth, but said she was 18 years old. Giltner did not believe the female passenger regarding her age because she had "very young facial characteristics," a "high pitched voice," and was "very petite" and "slender." Wheeling police officer Palomares arrived at the scene, spoke with the female passenger, and took her to the

police station.[2] On cross-examination, Giltner confirmed that the female passenger said she was 18 years old and asked if defendant could drive her home.

¶ 19    The State entered stipulations that if called, nurse Vilma Castro would testify that on March 25, 2012, she collected biological evidence from V.S. and sealed the evidence in a sexual assault kit, and Wheeling police officer Andrew Teichen would testify that he collected the sexual assault kit from the hospital, and that it was inventoried and submitted for analysis. Wheeling police detective Ignacio Oropeza Hernandez would testify that he collected a buccal swab from defendant, inventoried it, and it was submitted for analysis. Finally, forensic scientist Sara Owen would testify that she conducted a DNA analysis of a vaginal swab from the sexual assault kit and identified a mixture of DNA profiles, one female profile that matched V.S. and one male profile from which defendant could not be excluded.

¶ 20    Defense counsel published the dashboard camera video to the court and moved for a directed verdict, which the court denied.

¶ 21    Defendant testified that he communicated with V.S. for "maybe a few months" prior to the incident. She never told him her age. He did not text or speak with her by phone prior to March 24, 2012. V.S. invited him to a party at approximately midnight on March 24, 2012. She gave him her phone number and asked him to pick her up at an intersection because she was "sneaking out." The two exchanged text messages, but V.S. never told him her age via text.

¶ 22    Defendant picked up V.S. shortly after midnight. While at the party, defendant did not defend V.S. regarding her age. Around 4 a.m., V.S. asked defendant to take her home. Both V.S.

---

[2] Officer Palomares's name does not appear in the report of proceedings.

and defendant left the party and entered defendant's vehicle. Defendant asked V.S. to kiss him, which she did. This led to further sexual contact.

¶ 23     At some point, a bright light shone into the vehicle, and defendant returned to the driver's seat in response. A police vehicle drove up to defendant's vehicle. The officer (Giltner) rolled down his window and instructed defendant to pull over. V.S. told defendant to drive away, but he told her he would speak to Giltner and "nothing bad" would happen.

¶ 24     Giltner approached the vehicle and asked for defendant's license and registration. V.S. told Giltner she was 18 years old but did not have her license with her. Giltner then asked defendant to step out of the vehicle. Defendant lost track of V.S. after he exited. Officers arrested defendant and drove him to the police station.

¶ 25     Defendant told V.S. that he would not take her home if she did not kiss him, but denied forcing her to kiss him or have sexual contact with him. V.S. never told him to stop. In response to trial counsel's question, "did you know the age of [V.S.]?" defendant responded, "No, I did not."

¶ 26     On cross-examination, defendant said he contacted V.S. at random on Facebook and gave her his phone number on January 2, 2012. Between January 2, 2012 and February 21, 2012, he accessed her Facebook account on at least seven occasions and sent her multiple messages. On February 21, 2012, V.S. turned down defendant's invitation to a night club so she could attend a "Turnabout" event because it would be a "high school memory." This was the first response he received from V.S. since January 2, 2012. On March 3, 2012, he sent her a message stating that he wanted to "f*** the s*** out of you." Defendant stated that he never clicked on V.S.'s "about" page because it "didn't interest" him.

¶ 27    Defendant initiated contact with V.S. on March 24, 2012, and acknowledged that V.S. told him to pick her up from her parents' house after they went to sleep on the morning of March 25, 2012. The two did not ask each other about their respective ages when V.S. entered the vehicle. Defendant did not ask V.S.'s friends at the party about her. He knew V.S. had to be home before her parents woke up, but stated that he was joking when he told V.S. that he would not drive her home unless she kissed him. He did not recall telling Giltner that he met V.S. at the party and that she seemed to like him. On redirect, defendant confirmed that he told Giltner, "you know you guys have been to college parties, you know what kissing leads to," and he did not want to get V.S. in trouble.

¶ 28    During closing arguments, defense counsel argued that the State failed to prove defendant knew V.S.'s age. According to counsel, the evidence showed that V.S. did not tell defendant how old she was but did tell him that she went to "over age" clubs, enjoyed raves, and used ecstasy. Defense counsel stated that the conversations were "meant to direct someone to believe that she is a person of age." There was no evidence defendant accessed the "about" page of V.S.'s Facebook account. Counsel further argued that V.S. was a "liar" and "exaggerator," and her testimony that she told defendant she was 15 years old when she entered his vehicle was not credible.

¶ 29    In rebuttal, the State argued that defendant testified that he had "no idea" how old V.S. was, and thus could not establish that he reasonably believed she was 17 years old. Moreover, defendant's testimony was incredible, as exemplified by his contention that he never accessed V.S.'s Facebook "about" page, and his defense of mistake of age was untenable where he knew that V.S. had to sneak out of her parents' house to go to the party. The prosecutor noted that

defendant lied to V.S. about his age, and asked that the court credit V.S.'s testimony that she told defendant her age.

¶ 30    The court found defendant guilty on both counts, citing V.S.'s appearance in court and remarking that she was "very slight" and "very petite," "very young looking," had a "very quiet soft spoken voice," and looked "quite young." The court said that even if defendant did not learn V.S.'s age on Facebook, he knew that V.S. had to sneak out of her parents' house, something adult children would not do. Though defense counsel argued that defendant reasonably believed V.S. was 17 years old, defendant actually testified that "I did not know her age. I repeat, I did not know her age." Based on her appearance alone, defendant could not have reasonably believed she was "anywhere near 17."

¶ 31    The court denied defendant's motion for a new trial. After a hearing, the court sentenced defendant to concurrent three-year prison terms on each count and denied defendant's motion to reconsider sentence.

¶ 32    On direct appeal, defendant argued that his trial counsel was ineffective because he "failed to ask [defendant] during direct examination how old he thought V.S. was at the time he engaged in sexual contact with her." *People v. Patino*, 2016 IL App (1st) 132473-U, ¶ 19. He also argued that his sentence was invalid because the court considered an improper factor in aggravation. We affirmed, finding in relevant part that "the single question" defendant complained was not asked "would have made absolutely no difference in the outcome" because of the "ample evidence" that defendant knew or should have known V.S. was under 17 years of age. *Id.* ¶ 23.

¶ 33    On June 23, 2017, through new counsel, defendant filed a postconviction petition alleging that trial counsel provided ineffective assistance by failing to support defendant's mistake of age

defense and failing to impeach V.S. with a prior inconsistent statement. Respecting the ineffective assistance claim, defendant alleged in his petition that, at trial, counsel did not ask defendant how old he believed V.S. was or elicit the bases for defendant's belief. Defendant asserted that this testimony was essential to his defense that he reasonably believed that V.S. was at least 17 years old.

¶ 34    Defendant attached his affidavit to the petition, which purported to contain information that defendant told counsel prior to trial but counsel failed to elicit. In relevant part, defendant averred that he told counsel that V.S. never told defendant her age, but he believed she was at least 18 years old and a senior in high school. Defendant based this belief on V.S.'s representation that she had been to a club for persons age 17 or older, enjoyed raves, and used ecstasy. In defendant's experience, only individuals 18 years or older engage in these activities. Defendant told V.S. through Facebook messenger that he had worked at and been to raves. According to defendant, people at raves who appeared younger than 18 would look out of place and would typically not be welcomed.

¶ 35    Defendant also attested that V.S. invited him to a college party, and in his experience, people younger than seniors in high school are usually not invited to college parties. Additionally, defendant believed that V.S. looked like a typical 18-year-old girl at a college party, and he spoke to college students while at the party. Most of the people at the party appeared to be of college age and V.S. seemed to be friends with other college-aged individuals at the party. He further alleged that V.S. looked significantly different at the party than she did during trial or in People's Exhibit No. 2. Finally, defendant alleged that in his experience, 18-year-old high school seniors may still live at their parents' house and attend high school dances.

¶ 36    Defendant argued in the petition that had trial counsel elicited the information in his affidavit, there was a "reasonable probability that the trial court would have found reasonable doubt of [defendant's] guilt."

¶ 37    The circuit court denied defendant's postconviction petition at a hearing on July 28, 2017. The court found that defendant's ineffective assistance claim was barred by *res judicata* because he raised the same issue on direct appeal. During the hearing, postconviction counsel argued that the petition raised issues beyond trial counsel's "mere failure to ask" the specific question of what age defendant believed V.S. to be, as defendant's affidavit identified factors that contributed to his "state of mind" regarding V.S.'s age. The circuit court noted that this court's order on direct appeal highlighted the trial court's conclusion that "no reasonable person" could believe that V.S. was 17 years old "regardless of whether [defendant] believed it or not." The circuit court then dismissed the petition, finding that the "issues were raised and ruled on by the Appellate Court." On its half-sheet, the circuit court noted that the "issues were raised [and] ruled on by the Appellate Court *** and no new issues have been raised."

¶ 38    On appeal, defendant initially contends that the circuit court erred in dismissing his postconviction petition because his claim for ineffective assistance was not barred by *res judicata*.

¶ 39    The Act "provides a method to challenge a conviction or sentence based on a substantial violation of constitutional rights." *People v. Boykins*, 2017 IL 121365, ¶ 9. Petitions brought pursuant to the Act are reviewed in three stages, and a defendant's petition need only present the "gist" of a constitutional claim to progress to the second stage of review. *People v. Bailey*, 2017 IL 121450, ¶ 18. The circuit court may order summary dismissal of a postconviction petition at the first stage only where all claims are frivolous or patently without merit (725 ILCS 5/122-2.1(a)(2)

(West 2016)), meaning that the petition has no arguable basis in law or in fact (*People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009)). We review *de novo* the circuit court's summary dismissal of a postconviction petition and may affirm the dismissal on any grounds supported by the record. *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003).

¶ 40    *Res judicata* bars a defendant from raising claims in his postconviction petition that were ruled on in his direct appeal. *People v. Holman*, 2017 IL 120655, ¶ 25. This bar may be relaxed in the context of an ineffective assistance of counsel claim "where the facts relating to the issue of counsel's incompetency do not appear on the face of the record." *People v. Orange*, 168 Ill. 2d 138, 167 (1995); see also *People v. Wilson*, 2013 IL App (1st) 112303, ¶ 16 (an exception to the general *res judicata* bar applies where the relevant facts are not contained in the original appellate record).

¶ 41    In *Orange*, the defendant argued on direct appeal to the supreme court that trial counsel provided ineffective assistance at sentencing by failing to present mitigating evidence, including the testimony of a witness who testified at trial and his mother. *Orange*, 121 Ill. 2d at 389. The supreme court disagreed, finding that the witness "had not proved to be *** credible" and that the value and substance of testimony from defendant's mother was "not apparent from the record." *Id.* at 389-90. In his postconviction petition, the defendant submitted 18 affidavits describing his "positive traits" and "abusive and violent upbringing." *People v. Orange*, 168 Ill. 2d 138, 167 (1995). The supreme court ruled that the claim was not barred by *res judicata* because the mitigating evidence was not part of the record on direct appeal. *Id.*

¶ 42    Similarly, in *Wilson*, the defendant argued unsuccessfully in his response to appellate counsel's motion for leave to withdraw on direct appeal that trial counsel was ineffective for not

presenting a witness. *Wilson*, 2013 IL App (1st) 112303, ¶ 8. In his postconviction petition, the defendant provided an affidavit from the witness detailing the proposed testimony. *Id.* ¶ 10. We found that the ineffective assistance claim in the postconviction petition was not barred by *res judicata* because the information in the witness's affidavit was not contained in the record on direct appeal. *Id.* ¶ 17.

¶ 43    Here, defendant argued on direct appeal that trial counsel was ineffective for not asking a specific question: how old defendant thought V.S. was at the time of the sexual contact. We rejected this claim on the basis that defendant could not establish prejudice. In his postconviction petition, defendant argues that counsel was ineffective not only for failing to ask how old defendant believed V.S. was, but also for failing to elicit the bases underlying defendant's belief, as described in defendant's affidavit attached to the petition.

¶ 44    Based on our review of the petition and defendant's affidavit, we find that the averments in defendant's affidavit that he believed V.S. was 18 at the time of sexual contact, and the bases for this belief, were not part of the record on direct appeal. See *Orange*, 168 Ill. 2d at 167; *Wilson*, 2013 IL App (1st) 112303, ¶ 17. It follows that *res judicata* does not apply to this claim because defendant's argument depends on factual allegations that were not available in the record on direct appeal.

¶ 45    Although *res judicata* does not bar defendant's claim, our review of a summary dismissal is *de novo*, and we may affirm on any basis supported by the record. See *Lee*, 344 Ill. App. 3d at 853. Accordingly, we move to the merits of defendant's claim.

¶ 46    Criminal defendants have the right to effective assistance of trial counsel under both the U.S. and Illinois constitutions. *People v. Peterson*, 2017 IL 120331, ¶ 79. To establish a claim of

ineffective assistance, the defendant must show that trial counsel's conduct was deficient, and that the deficiency caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). At the first stage of postconviction review, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *People v. Hodges*, 234 Ill. 2d. 1, 17 (2009).

¶ 47    To establish aggravated criminal sexual abuse as charged here, the State was required to prove that defendant committed "an act of sexual penetration or sexual conduct with a victim who is at least 13 years of age but under 17 years of age and [the defendant] is at least 5 years older than the victim." 720 ILCS 5/11-1.60(d) (West 2012). Mistake of age, an affirmative defense to this charge, required defendant to show that he reasonably believed V.S. was 17 years of age or older at the time of the offense. 720 ILCS 5/11-1.70(b) (West 2012); see also *People v. Jones*, 175 Ill. 2d 126, 132 (1997).

¶ 48    Based on defendant's petition, it is at least arguable that his counsel was ineffective for failing to elicit testimony necessary to support the affirmative defense that defendant reasonably believed that V.S. was at least 17 years old. At this point, we take all well-pleaded facts as true and do not engage in any fact-finding. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). Before trial, defendant told his counsel that although V.S. never told him her age, he believed V.S. was at least 18 years old and a senior in high school. Defendant also shared the various reasons why he believed that V.S. was 18 years old. At trial, defense counsel raised the affirmative defense of mistake of age, and stated in his opening statement that V.S. told defendant that she was 18 years old. According to defendant's affidavit, that was not what had been discussed with counsel. During

defendant's testimony, defense counsel asked whether he knew V.S.'s age, and defendant answered that he did not. There was no testimony whatsoever about what age defendant reasonably believed V.S. to be.

¶ 49    At the very least, there is a disconnect between the information defendant shared with his counsel before trial, which was relevant to an affirmative defense of mistake of age, and counsel's performance at trial. Curiously, in his closing, defense counsel referenced the conversations between V.S. and defendant as intending to "direct someone to believe that she is a person of age," but counsel failed to actually elicit any testimony from defendant about his reasonable belief. Whether counsel's performance was a result of trial strategy is not germane to this stage of postconviction proceedings. See *People v. Tate*, 2012 IL 112214, ¶ 22 (argument that counsel had sound strategic reason for not calling a witness was inappropriate for the first stage of proceedings). Further, it is at least arguable that defendant was prejudiced by counsel's failure to support his affirmative defense. As noted above, there was no testimony about what age defendant reasonably believed V.S. to be. The court was left only with defendant's statement at trial that he did not know V.S.'s age, which was in turn used to convict him. The missing testimony arguably would have supported defendant's affirmative defense. Defendant's petition had an arguable basis in law and fact and should not have been dismissed.

¶ 50    For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded for second-stage postconviction proceedings.

¶ 51    Reversed and remanded.